No. 22575.

THE COLORADO RIVER WATER CONSERVATION DISTRICT *v.*
THE TWIN LAKES RESERVOIR AND CANAL COMPANY
(468 P.2d 853)

Decided May 11, 1970.

562

DELANEY & BALCOMB, KENNETH BALCOMB, EDWARD MUL-
HALL, JR., for plaintiff in error.

Lawrence L. Fenton, Holland & Hart, John U. Carlson, Philip A. Danielson, Craig Barnes, Charles T. Brandt, for defendant in error.

*En Banc.*

Mr. Justice Hodges delivered the opinion of the Court.

Plaintiff in error, The Colorado River Water Conservation District, will hereafter be referred to as protestant. Defendant in error, The Twin Lakes Reservoir and Canal Company, will be referred to as claimant.

On August 25, 1936, claimant was awarded by the trial court priority No. 431 for a total of 625 cfs (cubic feet of water per second of time) direct flow, and 54,452 acre feet of water, storage, out of the Roaring Fork River and its tributaries. Of the direct flow, 357 cfs was decreed absolutely; and the balance of 258 cfs direct flow was decreed conditionally.

On May 1, 1944, the trial court after hearing entered a supplemental decree increasing the absolute decree of 357 cfs, direct flow, by an additional 137 cfs to a total of 504 cfs. At the same time, the court reduced the conditional decree from 258 cfs to 121 cfs and conditioned the 121 cfs on claimant's beneficial use of the same and completion of its project, called the Independence Pass Transmountain Diversion System.

The conditional portion of the claimant's decree did not again come before the court until March 7, 1966, when the claimant requested permission to present further proof in support of the conditional portion of its decree. The matter was set for hearing in June 1966. Protestant, as owner and claimant of absolute and conditional decrees, junior to the claimant, appeared at the hearing for the purpose of challenging the claimant's right to the conditional portion of its decree because of the lack of diligence in completing its project. This hearing lasted three days, during which time considerable

testimony and documentary evidence was presented on the issue of claimant's alleged diligence in completing its appropriation. After the conclusion of the hearing, the trial court found that:

". . . the claimant has shown due diligence in perfecting the appropriation up to the date of this hearing and is entitled to an order continuing the matter . . . "

The court then ordered and decreed that the conditional decree of 121 cfs be continued until the next succeeding adjudication day of the court.

█ It is the protestant's position on this writ of error that the evidence of diligence on behalf of the claimant was insufficient as a matter of law, and therefore the trial court should have cancelled the conditional portion of the claimant's appropriation. In our view the evidence not only showed an unwavering intention on the part of the claimant to complete its project, but also showed diligence since 1944 in the work performed on its complex system. This evidence supports the trial court's finding of reasonable diligence and its judgment. Accordingly, we affirm.

I

The protestant devotes much argument about the result which should have been attained because of the claimant's failure since 1944 to comply with the provisions of C.R.S. 1963, 148-10-8, which was repealed in 1969. See Session Laws of Colorado 1969, ch. 373, § 20. This statute provided that a holder of a conditional decree shall appear in the district court on adjudication day in every even numbered year to present further proof in support of a conditional decree. Sub-section 4 of the statute specifically provided the procedures for cancellation available to other appropriators if the holder of a conditional decree did not appear and prove up biennially. Suffice it to say that none of these procedures were initiated by and in behalf of this protestor or any other appropriators. Nothing was done by anyone under the provisions of C.R.S. 1963, 148-10-8 from 1944 until 1966

when the claimant appeared in district court on adjudication day for the purpose of presenting proof of diligence in support of the conditional portion of its appropriation.

In effect, the protestant claims that the claimant's failures to appear for over twenty years is prima facie lack of reasonable diligence and that these failures should have been given much more weight by the district court. The protestant urges that had the trial court either imposed this greater burden of proof on the claimant, or had the trial court given greater consideration to these failures in its appraisal of the evidence, it would have necessarily found a lack of reasonable diligence, and would have adjudged a cancellation of the conditional portion of the claimant's appropriation.

 Claimants of conditional water rights should not be permitted to hoard these conditional rights in perpetuity without diligent efforts to complete their works to the detriment of those seeking to make use of the same water. In our view, the obvious purpose behind C.R.S. 1963, 148-10-8 was to prescribe an orderly method of preventing this by providing procedures for the judicial determination of continuing diligence on previously awarded conditional priorities.

██ The trial court found that since 1944 and up to and including June 28, 1966, the date of the hearing, the claimant "has shown reasonable diligence and progress in the prosecution of the completion" of its appropriation. As we interpret this finding it means that since 1944 the claimant had demonstrated continuing diligence and constant efforts to complete its over-all project. Also, the trial court in its finding specifically recognized that the last previous appearance of the claimant was on May 1, 1944, when the court decreed that the balance of the claimant's appropriation of 121 cfs would continue as a conditional decree. Obviously, the trial court gave full consideration to the fact that the claimant had not been in court on its conditional decree since that date. Based on these findings, it continued the life of the claimant's

conditional decree, and in view of this basis provided adequate support for the trial court's judgment on this particular issue posed by the protestant. Where a record shows, as it does here, that a trial court has given consideration to all the evidence, we will not on review say, as the protestant seems to urge, that the trial court failed to give sufficient weight to any certain phase of the case.

II

The thrust of the protestant's second argument that the evidence was insufficient as a matter of law is that the capacity of Tunnel No. 1, which sets the over-all limit on the claimant's ability to divert water, has not been increased by construction improvements since before 1944. It is the protestant's position that this fact standing alone is proof of the lack of any diligence on the part of the claimant to complete its project to its full conditionally decreed capacity.

Without detailing the complex collection system involved in claimant's project, the evidence in this record reveals that continuous work, weather and the economic condition of the claimant permitting, was performed over the intervening years since 1944 on the collection system. It was clearly indicated that the claimant placed the highest priority on improving these parts of its system in order to product sufficient water to justify the completion of improvements on Tunnel No. 1 which could then carry its full appropriation including the conditional portion. There is no dispute that Tunnel No. 1 and the collection system of canals, dams and reservoirs always have been and are now components of the claimant's project, the Independence Pass Transmountain Diversion System.

The evidence in this record shows that during the years from 1944 to 1966 much of the collection canal was re-channeled; thousands of feet of pipe were laid and a road was constructed on top of the pipe to facilitate the movement of construction vehicles and equipment. Engineering studies were conducted to determine methods

of seepage loss control. Tons of bentonite were applied to the canal to reduce leakage. Diversion dams and bridges were constructed and side flow collection pipes were laid. Approximately $515,000 was expended by the claimant on the collection system. The improvements on the collection system and further work in the planning stage are designed to complete the entire project including the construction of lining to be applied to Tunnel No. 1 to increase its capacity.

 The question of diligence must be determined in the light of all factors present in a particular case, including the size and complexity of the project; the extent of the construction season; the availability of materials, labor and equipment; the economic ability of the claimant; and the intervention of outside delaying factors such as wars, strikes and litigation. *City and County of Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992; *Taussig v. Moffat Tunnel Co.,* 106 Colo. 384, 106 P.2d 363; and *Holbrook Irrigation District v. Fort Lyon Canal Company,* 84 Colo. 174, 269 P. 574.

 Although certain improvements on Tunnel No. 1 which would enlarge its capacity and permit it to also carry the conditional portion of the claimant's appropriation were not accomplished since 1944, nevertheless, as shown heretofore, much work was accomplished during this period on the collection system. These improvements were for the purpose of gathering and collecting sufficient water to fill the appropriation. We perceive nothing unreasonable about this plan of action. Each component of the claimant's system serves a function, and the function of Tunnel No. 1 is to carry all the appropriated water. Before it can, however, the other components must be constructed and improved to a point where they will deliver all the appropriated water to the mouth of Tunnel No. 1. A complex system cannot be completed all at once. Diligent work on one part of such

a system may be held to be diligence in the completion of the entire system.

■ It is well recognized in Colorado water law that to be entitled to an order finding reasonable diligence and continuing a conditional decree the claimant is required to present evidence of work performance on at least a segment or a portion of a complex and integrated system. In *Metropolitan Suburban Water Users Association v. Colorado River Water Conservation District*, 148 Colo. 173, 365 P.2d 273, this court found it impossible to reconcile the district court's finding that due diligence had been exercised with reference to the Home Stake portion of the project, but not with reference to the Eagle-Arkansas portion. The court noted that the claimant had at all times considered the Home Stake and the Eagle-Arkansas as one project designed to bring the water from the western slope to the Arkansas River Basin. In this regard the court stated:

"There can be no doubt from the record before us that the Association did initiate an appropriation for the Eagle-Arkansas Ditch, and this is true whether we consider it as an integral part of the over-all project of claimant, or as a separate project. *If it is part of the over-all project, then the court's finding that an appropriation was initiated September 5, 1956, and that due diligence has been exercised, applies to the whole project,* including the Eagle-Arkansas Ditch." [Emphasis added.]

■ This court has also acknowledged that alteration and work on a part of a claimant's water system, in order to generate a more efficient and economical plan constitutes due diligence. *Four Counties Water Users Association v. Colorado River Water Conservation District*, 159 Colo. 499, 414 P.2d 469.

■ In conclusion as we view the evidence, and as the trial court obviously viewed it, when the claimant performed the improvements, made certain installations, and did construction work on the collection components of its

general project, it demonstrated reasonable diligence toward the completion of its whole system, which included Tunnel No. 1 as an integral part of the system.

Judgment affirmed.