TRANS–COUNTY WATER, INC., Applicant-Appellant and Cross-Appellee,

v.

CENTRAL COLORADO WATER CONSERVANCY DISTRICT; Groundwater Management Subdistrict of the Central Colorado Water Conservancy District; Irrigationists Association; Cache La Poudre Water Users Association, Objectors-Appellees and Cross-Appellants,

and

City of Broomfield; Lower South Platte Water Conservancy District; Prewitt Operating Committee/G. Allyn Wind, Objectors-Appellees,

and

James R. Clark, Division Engineer, Water Division No. 1, Appellee.

No. 84SA412.

Supreme Court of Colorado, En Banc.

Nov. 3, 1986.

Vranesh and Raisch, Michael D. Shimmin, Eugene J. Riordan, Boulder, for applicant-appellant and cross-appellee Trans-County Water, Inc.

Kim R. Lawrence, Greeley, for objectors-appellees and cross-appellants Central Colorado Water Conservancy Dist. and Groundwater Management Subdistrict of the Central Colorado Water Conservancy District.

Donald F. McClary, Fort Morgan, for objector-appellee and cross-appellant Irrigationists Ass'n.

Steven B. Ray, Fort Collins, for objector-appellee and cross-appellant Cache La Poudre Water Users Ass'n.

Harvey W. Curtis, Denver, for objector-appellee City of Broomfield.

Objector-Appellee Lower South Platte Water Conservancy Dist. not appearing.

Objector-Appellee Prewitt Operating Committee/G. Allyn Wind not appearing.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Lois G. Witte, Asst. Atty. Gen., Denver, for appellee James R. Clark.

ERICKSON, Justice.

Trans-County Water, Inc. (Trans-County) appeals a decision of Water Division I of the District Court (water court) denying Trans-County's application for a quadrennial finding of reasonable diligence in the development of a conditional appropriation. We affirm.

## I.

On June 8, 1978, Trans-County was awarded a conditional water right to divert, store, and refill 466,800 acre-feet of water and direct flow rights totalling 2,060 cubic feet per second from the South Platte River near Julesburg, Colorado. The amount to be diverted exceeds in most years the measured flow of the South Platte River at the Julesburg gauging station. The purpose of the diversion was to provide irrigation for northeastern Colorado and to supplement and recharge the declining Ogallala Aquifer. The 1978 decree called for Trans-County to divert the water at five separate diversion facilities, and to store the water in eleven proposed reservoirs.

Section 37-92-301(4), 15 C.R.S. (1973), requires that the owner of a conditional water right must obtain quadrennial findings of reasonable diligence in the development of the conditional appropriation. Accordingly, the 1978 decree required Trans-County to file an application with the court "on or before November 1981" for a determination that Trans-County had exercised reasonable diligence in the development of the South Platte River project. As a guide to Trans-County, the water court set forth the following five "minimum criteria" of reasonable diligence that Trans-County was required to meet to obtain its first quadrennial finding of reasonable diligence:

(1) Formation of a taxing district to develop and operate the project;

(2) Execution of agreements or initiation of condemnation proceedings for the use of the Prewitt Reservoir;

(3) Preparation and submission of a comprehensive work schedule;

(4) Commencement of land surveying and soil tests of dam sites, recharge areas, and construction sites; and

(5) Procurement of interim and permanent financing commitments for the lower river phase and the development of a plan for financing the entire system.

In November of 1981, Trans-County requested an extension of time within which to file its application for a quadrennial finding of reasonable diligence. The water court granted the extension to January 29, 1982, and the application was filed within the extended time period.

Objections to the application were filed by the Central Colorado Water Conservancy District, the Management Subdistrict of the Central Colorado Water Conservancy District, the Cache La Poudre Water Users Association, the City of Broomfield, the Irrigationists Association, the Lower South Platte Water Conservancy District, and the Prewitt Operating Committee (Objectors). The Objectors asserted that Trans-County had not been diligent in developing the conditional appropriation, and that the water court lacked jurisdiction to grant an extension of time.

The issues were tried to the court on April 25–27, 1983. The evidence presented at trial established that Trans-County had spent the bulk of the preceding diligence period attempting to procure financing to conduct a feasibility study of the project. Trans-County's proof of diligence included general educational efforts to promote the project, general discussions and talks with public officials, and various attempts to solicit donations and pledges to finance the feasibility study. Although Trans-County expended approximately $30,000 on efforts to obtain financing for the feasibility study, Trans-County's efforts were unsuccessful.

In 1980, in an effort to obtain funds from another source, Trans-County petitioned the Yuma County District Court to form a taxing district to develop and operate the project. Trans-County paid for the costs of the petition by issuing $51,586.25 in promissory notes that were payable only upon the

successful formation of the taxing district. The petition was denied because Trans-County failed to establish the feasibility of the project, and because a taxing district could not be formed for the purpose of obtaining funds to conduct a feasibility study.

Trans-County failed to produce evidence that it complied with the "minimum criteria" of reasonable diligence set forth in the conditional decree. Trans-County's attempt to form a taxing district was unsuccessful, and Trans-County made no effort to effect an agreement with the owners of the Prewitt Reservoir. Although Trans-County did prepare a work program that, if followed, would meet the minimum criteria set forth in the 1978 decree, it failed to comply with that schedule. Finally, Trans-County conducted no on-site activity, performed no land surveying or soil tests, obtained no easements for on-site work, and failed to obtain interim or permanent financing for the project.

On June 17, 1983, the court entered a memorandum decree finding that Trans-County had not exercised reasonable diligence in the development of its conditional appropriation. The water court relied primarily on Trans-County's lack of progress in developing the project, and on Trans-County's failure to meet the "minimum criteria" of reasonable diligence set forth in the 1978 decree. The memorandum decision and decree entered by the water judge after reviewing the minimum criteria and the evidence presented stated:

The Court does not consider these requirements absolutely binding on the Court. The Court must determine each application on an *ad hoc* basis in light of all the factors present in each particular case. *Colorado River Water Conservation District v. Denver*, 642 P.2d 510, 513 (1982). The Court does, however, give considerable weight to these requirements set out in the conditional decree as they state the judgments of the Water Judge who heard the original Application for Conditional Water Right. The purpose of the Water Court in establishing these requirements as minimum evidence is apparent. A conditional water right must amount to something more than a dream or a vision. The Court in granting the conditional water right determined that these five minimum criteria were necessary to establish, four years later, if the dream had progressed sufficiently that it could become a reality. All of the evidence added together whether judged by these five criteria or "all the facts and circumstances" relating to the development of the project, *Colorado River Water Conservation District v. Denver*, 640 P.2d 1139, 1141 (1982), demonstrate that this project is no more a reality or less of a dream that it was upon the entry of the conditional decree. No one knows if the project will work or if it will provide a benefit to its intended beneficiaries.

The requirement in the conditional decree that the Applicant form a taxing district for the purpose of developing and operating the project was reasonably required because the evidence shows it has always been the Applicant's intent that a taxing district, rather than the Applicant, as a non-profit corporation, develop and operate the project. The uncontradicted evidence before the Court is that only a public entity with taxing powers could develop a project of this magnitude. It is proper therefore to look at the public response to the proposed project and the response of the existing public agencies within the area. Applicant encountered significant opposition to inclusion into the water conservancy district. Public support of the project financially was not significant. The evidence shows the public agencies within the area most significantly affected by the proposed project were groundwater management districts. It was the members of these districts, irrigated agricultural of the area, that stood to primarily benefit from the proposed project. While these districts did contribute the bulk of the cash expenditures that were made by the applicant, they clearly had the means to raise the funds necessary for a feasibility study,

yet they did not. The lack of general public support and the support of public agencies confirms the conclusion of the Court that the project has not progressed, in the last four years, in any significant regard from a dream to a reality.

With respect to the other requirements of the conditional decree the evidence shows the Applicant made no efforts whatsoever to comply with those requirements.

Trans-County appealed the denial of its application, asserting that its activities with respect to the conditional appropriation established reasonable diligence as a matter of law. The Objectors cross-appealed, renewing their claim that the water court lacked jurisdiction to extend Trans-County's required filing date. Trans-County contends in response that this court lacks jurisdiction over the Objectors' cross-appeal because the Objectors failed to file a timely motion for new trial.

In our view, the water court did not abuse its discretion in finding that Trans-County failed to exercise reasonable diligence in the development of its conditional appropriation. Because we affirm the findings of the water court, we do not address matters raised by the cross-appeal.

II.

■ Section 37–92–301(4), 15 C.R.S. (1973) provides:

In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned. The ruling of the referee and the judgment and decree of the court determining a conditional water right shall specify the month in such calendar year in which application for a quadrennial finding of reasonable diligence shall be filed with the water clerk pursuant to section 37–92–302(1).

If the holder of a conditional decree fails to obtain a quadrennial finding of reasonable diligence, the right is deemed abandoned, and the holder of the right loses the priority date of the conditional decree. *Municipal Subdistrict v. Rifle Ski Corp.*, 726 P.2d 635 (Colo.1986); *Town of De Beque v. Enewold*, 199 Colo. 110, 606 P.2d 48 (1980).

■ To obtain a finding of reasonable diligence, the holder of the right must prove continuous, project-specific effort directed toward the development of the conditional right commensurate with his capabilities. Reasonable diligence must be evidenced by reasonable progress in the development of the conditional appropriation in the most expedient and efficient manner. *See Colorado River Water Conservation District v. City and County of Denver*, 640 P.2d 1139, 1142 (Colo.1982) (a court making a diligence determination must look at all relevant factors in determining whether the applicant is developing the appropriation for a beneficial use in the most expedient fashion possible; non-project related efforts, standing alone, are insufficient); *Orchard Mesa Irrigation District v. City and County of Denver*, 182 Colo. 59, 65, 511 P.2d 25, 28 (1973) (to prove due diligence, there must be concrete efforts to finalize the appropriation; a vague hope to use the water someday is insufficient); *City and County of Denver v. Northern Colorado Water Conservancy District*, 130 Colo. 375, 399, 276 P.2d 992, 1004 (1954) (reasonable diligence is the steady application of constant effort to accomplish an undertaking).

■ Whether an appropriation has been developed with reasonable diligence is an ad hoc factual determination to be made by the trial court after examining all relevant evidence, including the size and complexity of the project, the extent of the construction season, the availability of material, labor, and equipment, the economic ability of the claimant, and the intervention of outside delaying factors. *Colorado River Water Conservation District v. City and County of Denver*, 640 P.2d 1139, 1141–42 (Colo.1982); *Colorado River Wa-*

ter Conservation District v. Twin Lakes Reservoir and Canal Co., 171 Colo. 561, 567, 468 P.2d 853, 856 (1970). A trial court's findings on the issue of reasonable diligence are binding on appeal if there is competent evidence to support them. Orchard Mesa Irrigation District v. City and County of Denver, 182 Colo. 59, 511 P.2d 25 (1973).

■ The record supports the water court's determination that Trans-County failed to exercise reasonable diligence in the development of its conditional appropriation. Trans-County knew in 1977 that it would be unable to complete the project without substantial funds from an outside source, yet it failed to acquire or develop a plan for acquiring the financing commitments necessary to complete the project. Its petition for the formation of a taxing district was denied, and it was unable in four years to procure funds sufficient to conduct an initial feasibility study. In addition, Trans-County failed to contact the owners of the Prewitt Reservoir, did not comply with its work schedule, and failed to perform land surveys, soil tests, or other on-site activities. In short, Trans-County has made little or no progress towards putting the waters of our state to a beneficial use. As the trial court found, "this project is no more a reality or less of a dream [than] it was upon the entry of the conditional decree. No one knows if the project will work or if it will provide a benefit to its intended beneficiaries."

■ Trans-County contends that the "minimum criteria" of reasonable diligence set forth in the 1978 decree are irrelevant in considering whether Trans-County acted with reasonable diligence. We disagree. The water court has broad discretion to consider all relevant factors. The record contains no indication that Trans-County objected to the inclusion of the suggested standards in the 1978 conditional decree. At that time the water judge considered these criteria to be relevant to the determination of whether that decree should be awarded. Trans-County did not appeal from the 1978 decree determining its condi-

tional water rights and is bound by its terms. Therefore, the question of whether it is within the discretion of a water judge to include in such a decree a list of tasks to be accomplished in order to establish diligence in the future is not before us. We express no opinion on that question. The water court, in this case, properly concluded that the minimum criteria remained relevant, though not controlling, in the determination of whether sufficient activity had occurred to establish reasonable diligence in this case.

Trans-County also claims that its continuous, although unproductive, efforts to secure financing for a feasibility study establish reasonable diligence as matter of law. We do not agree, especially when those efforts are evaluated against a background of the specific diligence requirements set forth in the conditional water right decree.

■ There is a fundamental policy underlying Colorado's water law favoring the most beneficial use of the state's limited water supply. Colorado River Water Conservation District v. City and County Denver, 640 P.2d 1139, 1142 (Colo.1982). To that end, the General Assembly has required that the water courts review the development of conditional appropriations every four years to prevent the accumulation of undeveloped and unproductive conditional water rights to the detriment of those seeking to apply the state's water beneficially. Id.; Colorado River Water Conservation District v. Twin Lakes Reservoir and Canal Co., 171 Colo. 561, 565, 468 P.2d 853, 855 (1970). To allow Trans-County to maintain its conditional appropriation indefinitely and without progress would frustrate that fundamental policy. We have implicitly recognized in prior cases that an applicant's lack of progress in the development of a conditional appropriation is relevant to a determination that the applicant failed to proceed with reasonable diligence. For example, we stated in Colorado River Water Conservation District, 640 P.2d at 1142 that:

To hold [that non-project related activities establish reasonable diligence] would

permit the claimant of a conditional water right to reserve his claim indefinitely without putting one drop of water to beneficial use or even making any objective on-site effort to make a beneficial use of the water. It is in the sound discretion of the water court, looking at all the facts and guided by the principle that water rights are to be developed in the most expedient and efficient manner possible under the circumstances, to determine what activities will be required for a showing of reasonable diligence.

In *Colorado River Water Conservation District v. Twin Lakes Reservoir and Canal Co.*, 171 Colo. 561, 568, 468 P.2d 853, 856 (1970), we said "[i]t is well recognized in Colorado water law that to be entitled to an order finding reasonable diligence and continuing a conditional decree the claimant is required to present evidence of work performance on at least a portion of a complex and integrated system." We also said in *Orchard Mesa Irrigation District v. City and County of Denver*, 182 Colo. 59, 65, 511 P.2d 25, 28 (1973), that "[a]t

some time the steps required to be diligently pursued [must] result in putting the water to beneficial use."

The water court properly considered Trans-County's activities in light of the fundamental policy favoring prompt development of Colorado's water, and the specific diligence criteria established by the conditional water right decree, and concluded in its discretion that Trans-County had not exercised reasonable diligence in the development of its conditional appropriation. Because that finding is adequately supported by the record, the water court did not abuse its discretion in denying Trans-County's application.

The judgment is affirmed.