The CITY OF LAFAYETTE, Applicant–Appellant/Cross–Appellee,

v.

The NEW ANDERSON DITCH COMPANY, n/k/a The Anderson Ditch Company, Opposer–Appellee/Cross–Appellant,

and

City of Boulder, City of Louisville, Water Users Association of District No. 6, Consolidated Lower Boulder Reservoir and Ditch Company, Base Line Land and Reservoir and Ditch Company, and Coal Ridge Ditch Company, Opposers–Appellees,

and

Division Engineer, Water Division 1, Appellee pursuant to C.A.R. 1(e).

No. 97SA2.

Supreme Court of Colorado, En Banc.

June 29, 1998.

As Modified on Denial of Rehearing Sept. 14, 1998.

David C. Lindholm, Boulder, for Applicant–Appellant/Cross-Appellee.

Timothy Buchanan, P.C., Timothy Buchanan, Arvada, for Opposer–Appellee and Cross–Appellant.

Moses, Wittemyer, Harrison & Woodruff, P.C., David L. Harrison, Veronica A. Sperling, Kelly J. Custer, Boulder, for Opposer–Appellee City of Boulder.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Joseph C. Smith, Jr., Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Denver, for Appellee the State Engineer and the Division Engineer for Water Division 1.

Justice BENDER delivered the Opinion of the Court.

In this case, we review upon direct appeal the decision of the district court for Water Division 1 (water court) in which the water court continued a decree for conditional wa-

ter rights but declined to make portions of these conditional rights absolute. The water court held that the applicant, the City of Lafayette (Lafayette), demonstrated reasonable diligence in developing conditional rights to a number of exchanges acquired under a 1987 decree and was entitled to a continuation of the decree. The water court denied Lafayette's request to have portions of some of these conditional rights, those involving use of the Anderson Ditch, decreed absolute because Lafayette allowed its contractual rights to use the ditch to expire and thus discontinued the diversion of water from these exchanges. Although our analysis differs somewhat from that of the water court, we agree with the water court's determination that Lafayette's conditional rights should continue for another diligence period and should not be decreed absolute. Giving effect to a provision in the conditional decree, we hold that Lafayette's conditional rights were not perfected since Lafayette had no legal right to use the point of diversion identified in the proposed absolute decree. Hence, we affirm the judgment of the water court.

## I.

In an effort to maintain an adequate water supply for its citizens, Lafayette initiated a large project to augment its existing water supply by taking water from Boulder Creek and placing it in the city's water storage and treatment facilities. This project involved the creation of an elaborate system of exchanges.[1] Completion of this project involved substantial expense and various tasks including the acquisition of numerous water rights, the procurement of agreements with various entities for the right to divert water from local ditches and streams, and the development and construction of means of transporting and storing water.

In March of 1983, Lafayette submitted an application for the determination of seventeen conditional appropriative rights of exchange in connection with this plan. These conditional rights included the right of exchange to the headgate of the Anderson Ditch, which was under the ownership of the New Anderson Ditch Company (New Anderson), a nonprofit mutual ditch company. Among the opponents to Lafayette's application was the City of Boulder (Boulder), which is the majority shareholder of New Anderson. Lafayette and Boulder later entered into a stipulation consenting to a proposed decree.

The water court granted Lafayette's application in March of 1987. Paragraph eleven of the final decree included the following language, which was drafted and inserted by Lafayette and Boulder:

> At the present time, Applicant does not possess any legal rights to transport the water described herein through the Anderson Ditch.... Applicant has agreed that this decree shall not be construed as an enhancement of Applicant's existing rights to utilize said facilities. Applicant has further agreed that no water will be conveyed through or stored in said structures in contravention of its existing rights until a legal right to utilize each facility has been lawfully obtained. *Applicant has further agreed with the City of Boulder that if a legal right to use the Anderson Ditch as a point of diversion has not been lawfully obtained by April 25, 1993, the approval of the Anderson Ditch as a point of diversion shall terminate.*

(Emphasis added.)

In May of 1987, Lafayette and New Anderson entered into an agreement to allow Lafayette to convey water through the Anderson Ditch in exchange for an annual fee. The agreement was to terminate on December 31, 1991; however, the parties later amended the agreement and extended the term through December 31, 1994. During the seven and one-half year period that this agreement was in effect, Lafayette continually diverted water using the Anderson

---

1. An exchange is a "substitution" of water in which an upstream user with junior rights takes an equivalent amount of water for beneficial use without impairing the availability of water lawfully divertible by others and substitutes water of a quality and continuity to meet the requirements of use to which the senior appropriation has normally been put. See § 37-80-120(3), (4), 10 C.R.S. (1997).

Ditch and made payments to New Anderson for the use of the ditch. At the end of the contract period, the agreement expired and Lafayette discontinued the diversion of water from its Anderson Ditch exchanges.

In addition to its activities relating to the Anderson Ditch portion of the exchange project, Lafayette consistently diverted water from other exchanges in its plan for augmentation. Lafayette also substantially developed other portions of the exchange project. Lafayette constructed the Lafayette–Goose Haven Reservoir Complex; acquired a contract for the completion of a preliminary design of a pipeline and pump station; constructed numerous improvements and additions to its water utility system, including constructing a five million gallon water tank, increasing the capacity of an existing tank, and completing approximately 7,500 feet of water main extensions; completed preliminary designs on new ditches and coordinated with the United States Army Corps of Engineers regarding a permit for one of the ditches; worked with the Colorado Department of Transportation on the application of raw water to the landscaping along a proposed highway; processed applications in other water law cases and perfected some of these rights; entered into agreements with other entities in furtherance of the overall plan; and proceeded with the design and construction of a municipal golf course that would be irrigated in part by water supplied by the exchanges in this plan. In sum, Lafayette spent approximately $3,000,000.00 in developing its plan for augmentation.

On March 25, 1993, Lafayette filed an application for a determination of water rights, requesting the water court to make portions of some of its exchanges absolute and to continue the conditional status of the remaining portions of those exchanges and the conditional status of its other exchanges for another diligence period. Five of the exchanges of which portions would become absolute involved use of the Anderson Ditch.

New Anderson opposed Lafayette's application, arguing that the water court should cancel all of the Anderson Ditch exchanges because Lafayette failed to satisfy the condition in paragraph eleven of the 1987 decree that "if a legal right to use the Anderson Ditch as a point of diversion has not been lawfully obtained by April 25, 1993, the approval of the Anderson Ditch as a point of diversion shall terminate."

The case proceeded to trial before the water court on March 17, 1995. The water court found that Lafayette's progress in completing other portions of the exchange project demonstrated reasonable diligence and continued the conditional decree of Lafayette's rights to these exchanges. The water court also made portions of some of the conditional exchanges absolute. With respect to the exchanges to the Anderson Ditch, however, the water court denied Lafayette's requests to make portions of these exchanges absolute and ruled that the exchanges would remain conditional for another diligence period. Thus, the water court provided Lafayette an opportunity to negotiate a new contract with New Anderson or establish an alternative means of exercising its appropriative right of exchange.

■■■ The water court noted that Lafayette had allowed its contract with New Anderson to expire and had ceased diversions for a time accordingly. Thus, the court concluded that it was premature to find that Lafayette had perfected its appropriate right of exchange in relation to the Anderson Ditch. The water court reasoned that if it were to decree an absolute water right based on a temporary right to transport water, the termination of the temporary right would result in an absolute right that could not be put to beneficial use, reducing the water available for appropriation by others. Thus, the water court ruled that "absent a permanent means of transport[ing] water, there can be no absolute water right."[2]

2. After the water court's oral ruling but before the issuance of the final decree, Lafayette unsuccessfully moved for reconsideration, arguing that (1) in April of 1996 it acquired an ownership interest in the Anderson Ditch resulting from an assignment of one eighth of one share of New

Anderson Ditch Company Stock, and that this ownership interest created a right to operate the exchanges to the Anderson Ditch; and (2) the water court should have dismissed New Anderson's statement of opposition upon learning that New Anderson was dissolved by opera-

On appeal, Lafayette argues that applying water to a beneficial use is the only requirement to converting a conditional water right to an absolute right, and that Lafayette, by appropriating water by the exchanges to the Anderson Ditch for over seven years, was entitled to a decree that would make these rights absolute. Lafayette contends that the water court erred by considering the absence of transportation facilities to effect the exchanges as a factor in determining whether to make Lafayette's rights to the exchanges absolute. Anderson cross-appeals, arguing that the water court erred by continuing Lafayette's conditional rights for another diligence period when paragraph eleven of the 1987 decree required the water court to cancel its approval of Anderson Ditch as a point of diversion and Lafayette lacks permanent authorization to divert water through the ditch.

## II.

■ The Water Right Determination and Administration Act of 1969 (the Act), §§ 37–92–101 to –602, 10 C.R.S. (1997), defines a water right as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." § 37–92–103(12). Thus, a water right comes into existence when a person initiates and completes an appropriation of water of a natural stream of the state. *See · Shirola v. Turkey Canon Ranch Ltd. Liab. Co.*, 937 P.2d 739, 748 (Colo.1997). The right to use the water accrues by acts in which the person puts the water to a beneficial use. *See id.* An appropriator's water right vests, after a period or periods of reasonable diligence, once an appropriation is perfected. *See id.; Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 34 (Colo.1997) (stating that a water right comes into existence when a person takes water and applies it to beneficial use).

■ Water rights are generally unenforceable within the priority administration system absent an adjudication under the Act. *See Turkey Canon*, 937 P.2d at 749. A water rights adjudication is a proceeding to determine the respective priorities of water rights on a stream system for purposes of administration. *See* §§ 37–92–301 to –306. A decree does not confer, but rather confirms a pre-existing water right. *See Turkey Canon Ranch*, 937 P.2d at 748. Any person may file an application with the appropriate water court to obtain an adjudication of a water right or a conditional water right. *See* § 37–92–302(1)(a).

The Act allows an applicant to reserve a priority date for an appropriation of water that is not yet complete by obtaining a decree for a conditional water right. *See Dallas Creek*, 933 P.2d at 35. A conditional

---

tion of law on January 1, 1989. Lafayette raises these claims in its briefs to this court.

With respect to Lafayette's ownership claim, we agree with the water court's conclusion that the water court lacked subject matter jurisdiction over this claim because it is not ancillary to a water matter and should be resolved by the Boulder County District Court, where a civil action on this issue is pending. *See Crystal Lakes Water & Sewer Ass'n v. Backlund*, 908 P.2d 534, 542 (Colo.1996) (stating that the water court lacks jurisdiction over an issue that would not directly affect the outcome in the case); *FWS Land & Cattle Co. v. Colorado Div. of Wildlife*, 795 P.2d 837, 841 (Colo.1990) (stating that the water court lacks jurisdiction over claims that are only tangentially related to a water dispute).

We also agree with the water court's determination that New Anderson was a proper party to this matter despite its dissolved status. The general rule is that a dissolved corporation's ability to sue is limited by a two-year statute of limitations. *See* § 7–26–120(1), 2 C.R.S. (1997).

However, this limitation does not apply when corporate property is not distributed. Section 7–26–120(2), 2 C.R.S. (1997), provides, in pertinent part:

> Notwithstanding any provision of articles 20 to 29 of this title to the contrary, after dissolution, title to any corporate property not distributed or disposed of in the dissolution shall remain in the corporation. The majority of the surviving members of the last acting board of directors as named in the files of the secretary of state pertaining to such corporation shall have full power and authority to sue and be sued in the corporate name and to hold, convey, and transfer such corporate property. . . .

At the time that Lafayette filed its motion for reconsideration in this case, New Anderson had been dissolved for more than two years. However, no distribution of corporate property had occurred. Thus, the water court properly determined that New Anderson's status as a dissolved corporation did not preclude its participation in this case.

water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6). The policy underlying conditional water rights is "to encourage development of water resources by allowing the applicant to complete financing, engineering and construction with the certainty that if its development plan succeeds, it will be able to obtain an absolute water right." *Public Serv. Co. v. Blue River Irrigation Co.*, 753 P.2d 737, 739 (Colo.1988).

■ Any person who seeks a determination of a conditional water right must file a verified application in accordance with section 37–92–302(1)(a). An applicant for a conditional water right must show a substantial probability that the water "can and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time." § 37–92–305(9)(b); *see also Dallas Creek*, 933 P.2d at 35; *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 31 (Colo.1996). The applicant must initiate and complete the "first step" toward appropriation by exhibiting an intent to appropriate accompanied by some open, physical demonstration of the intent. *See Harvey Land & Cattle Co. v. Southeastern Colo. Water Conservancy Dist.*, 631 P.2d 1111, 1113 (Colo. 1981).

After granting opposers an opportunity to file protests, the water court judge issues a determination granting or denying a decree for a conditional water right. *See* §§ 37–92–303, –304. Because of the potential for hoarding conditional rights "to the detriment of those seeking to apply the state's water beneficially," *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.*, 727 P.2d 60, 65 (Colo.1986), conditional rights are subject to continued scrutiny. *See Dallas Creek*, 933 P.2d at 35. Thus, every six years after the issuance of the decree, the owner or user must obtain a finding of reasonable diligence in the development of the proposed appropriation or the conditional water right will be considered abandoned. *See* § 37–92–301(4)(a)(I).

■ Whether an owner or user of a conditional water right pursued an appropriation with reasonable diligence is a factual determination made "on a case by case basis in light of all the factors presented." *Talco, Ltd. .v. Danielson*, 769 P.2d 468, 475 (Colo. 1989). The trial court must examine all relevant evidence. *See Trans–County Water*, 727 P.2d at 64. Considerations include but are not necessarily limited to:

(1) economic feasibility; (2) the status of requisite permit applications and other required governmental approvals; (3) expenditures made to develop the appropriation; (4) the ongoing conduct of engineering and environmental studies; (5) the design and construction of facilities; and (6) the nature and extent of land holdings and contracts demonstrating the water demand and beneficial uses which the conditional right is to serve when perfected.

*Dallas Creek*, 933 P.2d at 36. Compliance or noncompliance with conditions and requirements set forth in the decree for conditional water rights is some evidence—but is not determinative—of whether the applicant demonstrated reasonable diligence. *See Trans–County Water*, 727 P.2d at 65.

■ Work on one part of a system may constitute diligence on the completion of the entire system. *See Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co.*, 171 Colo. 561, 567–68, 468 P.2d 853, 856 (1970). Actual good faith work on the overall facilities necessary to consummate the ultimate goal is a part of the diligence required to continue the conditional decree. *See Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.*, 148 Colo. 173, 203, 365 P.2d 273, 289 (1961).

■ Finally, in order to perfect the conditional right, the applicant must satisfy the following criteria: (1) capturing, possessing, and controlling water; and (2) the application of the water to a beneficial use. *See City & County of Denver v. Northern Colo. Water Conservancy Dist.*, 130 Colo. 375, 387–88, 276 P.2d 992, 998–99 (1954). The applicant may then petition the water court to declare the right absolute for purposes of

fixing the appropriator's place in the priority system in relation to all other appropriators. *See* § 37–92–306. An absolute water right is not a right separate and distinct from the conditional right from which it originated. *See Purgatoire River Water Conservancy Dist. v. Witte,* 859 P.2d 825, 835 (Colo.1993). Instead, a conditional right matures into an absolute right. *See id.*

### III.

### A.

Applying these principles to the facts of this case, we first address the issue of whether Lafayette demonstrated reasonable diligence in the development of the exchanges that would permit the water court to extend the decree for another diligence period.

Upon obtaining the decree for conditional water rights, Lafayette contracted with New Anderson for the use of the Anderson Ditch as a point of diversion for a period of seven and one-half years, and during this period continually diverted water using the ditch and paid New Anderson for the use of the ditch.

■■■ Subsequently, Lafayette's contract with New Anderson expired. Paragraph eleven of the 1987 decree, which was drafted by the parties and included in the decree pursuant to a stipulation between the parties, provides that "if a legal right to use the Anderson Ditch as a point of diversion has not been lawfully obtained by April 25, 1993, the approval of the Anderson Ditch as a point of diversion shall terminate." A condition contained in a decree for conditional water rights is one relevant factor, among others, to determine the issue of reasonable diligence. *See Trans–County Water,* 727 P.2d at 65. However, this condition is not a conclusive factor. *See id.* An applicant is not required to show a present right to use a diversion facility in order to obtain or to continue a conditional water right. *Cf. FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 838 (Colo.1990) (stating that a right to use a diversion facility is one factor in determining whether an applicant "can and will" divert water and put it to a beneficial use). Moreover, in the context of this case, the condition contained in paragraph eleven purporting to terminate Lafayette's right to use the ditch as a point of diversion is of minimal significance when considered in light of the breadth and scope of Lafayette's overall plan for augmentation. This condition relates only to the Anderson Ditch, which is but one exchange in an elaborate system of seventeen exchanges designed to augment the water supply for an entire city. *See Talco, Ltd.,* 769 P.2d at 475 (stating that a determination of diligence requires consideration of all relevant factors).

■■■ Turning to the other factors relevant to the determination of whether Lafayette demonstrated reasonable diligence, Lafayette made consistent progress in its efforts to complete other portions of the project by working with other government agencies, making significant expenditures to develop the appropriation, and designing and constructing facilities for transporting and storing water as well as developing property that would be served by the water. *See Twin Lakes Reservoir & Canal Co.,* 171 Colo. at 567–68, 468 P.2d at 856 (stating that one important factor in a case involving a system of exchanges is the applicant's progress on developing the other portions of the system). We note that Lafayette's ability to perfect this right at a later date remains unchanged. During the new diligence period, Lafayette may be able to exercise its appropriative rights of exchange involving the Anderson Ditch pursuant to a new operating agreement with the owner(s) of the Anderson Ditch, or in the absence of such an agreement, proceed with appropriate judicial proceedings to obtain the right to operate the exchanges.

■■■ The water court is required to consider all relevant factors when determining the existence or continuation of a conditional decree. Those factors include, but are not limited to, the present right and prospective ability to use structures and facilities. *See City of Thornton,* 926 P.2d at 43. In this case, the water court properly took into account Lafayette's work on the project as a whole. Thus, the water court correctly determined that Lafayette demonstrated suffi-

cient progress to satisfy the standard of reasonable diligence required by our cases. *See, e.g., Dallas Creek,* 933 P.2d at 36. Hence, we hold that the water court properly continued the decree for Lafayette's conditional water rights to the Anderson Ditch for another diligence period.

### B.

We now turn to Lafayette's assertion that its diversion of water through the Anderson Ditch during the time that the Lafayette/New Anderson agreement was in effect entitles Lafayette to a decree making a portion of these exchanges absolute.

Lafayette took water from Anderson Ditch and applied it to beneficial use for the seven and one-half year period that the Lafayette/New Anderson contract was in effect. However, before trial, Lafayette's contract with New Anderson expired and Lafayette ceased operations involving the ditch. Perfection of a conditional water right requires application of water to a beneficial use so as to justify entry of an absolute decree fixing a priority relating back to the initiation of the appropriation. *See City & County of Denver,* 276 P.2d at 998–99. The conditional decree contemplated that Lafayette would not obtain an absolute decree if it no longer had a lawful right to divert water through the Anderson Ditch. Lafayette did not meet this test because at the time of the trial and the entry of the proposed absolute decree, Lafayette had no legal right to exchange water using the Anderson Ditch for application to beneficial use.

We hold that here, the applicant is not entitled to an absolute decree because the applicant had no legal right to use water from the point of diversion identified in the proposed absolute decree. Hence, the water court properly denied Lafayette's request for a decree making the rights to these exchanges absolute.

Lafayette argues that the water court improperly injected an additional requirement for the perfection of a conditional water right by requiring the applicant to possess facilities to transport the water when it ruled that "absent a permanent means of transport[ing] water, there can be no absolute water right." We agree with Lafayette that the water court's ruling is inaccurate, since Colorado law contemplates that legal arrangements for a means of diversion may be perpetual or for a term of years. *See Merrick v. Fort Lyon Canal Co.,* 621 P.2d 952, 955 (Colo.1981). Consistent with the terms of the stipulation between these parties, we have concluded that the water court was correct in declining to enter an absolute decree following trial, because Lafayette then had no legal right to use the point of diversion identified in the decree.

### IV.

In conclusion, we hold that Lafayette demonstrated reasonable diligence in developing the rights set forth in the 1987 decree, and that the water court properly continued Lafayette's conditional rights to exchanges to the Anderson Ditch for another diligence period. We further hold that at the time of the trial and the entry of the proposed absolute decree, Lafayette had no legal right to use the Anderson Ditch and, consistent with the terms of the conditional decree, was not entitled to an absolute decree with respect to the exchanges using this ditch. Thus, we affirm the decision of the water court.