## No. 25645

**Orchard Mesa Irrigation District v. City and County of Denver, Acting by and through its Board of Water Commissioners, and the Northern Colorado Water Conservancy District**

(511 P.2d 25)

Decided June 11, 1973.

Williams, Turner & Holmes, Anthony W. Williams, Delaney & Balcomb, Kenneth Balcomb, for plaintiff-appellant.

George L. Zoellner, Kenneth L. Broadhurst, James J. Petrock, Saunders, Snyder & Ross, P.C., Glenn G. Saunders, Davis, Graham & Stubbs, John M. Sayre, for defendants-appellees.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This matter arises in connection with the application of

plaintiff-appellant in Water Court, Div. 5, for a biennial finding of reasonable diligence pursuant to 1971 Perm. Supp., C.R.S. 1963, 148-21-18(1)(a), amended in 1970. The Water referee found reasonable diligence concerning the conditional decree for 100 c.f.s. from the Colorado River, priority No. 360A, with a date of April 28, 1914. Northern Colorado Water Conservancy District and the City and County of Denver filed statements of opposition. They hold junior decrees and claim the right to divert the water in question upstream. Honorable Clifford H. Darrow, acting district judge, rejected the findings of the referee, entered new findings that the applicant had failed to exercise reasonable diligence, and cancelled the conditional decree in toto.

Hereinafter the appellant, Orchard Mesa Irrigation District, will be referred to as the applicant. The appellees will be referred to as the protestants.

The applicant is a nonprofit Colorado irrigation district organized according to C.R.S. 1963, 150-1-1 *et seq.* Applicant operates and manages the Orchard Mesa irrigation system located entirely in Mesa County, Colorado. It has one absolute direct flow decree from the Colorado River, priority No. 197, for 450 c.f.s. with date of October 25, 1907. By virtue of inclusion of the Vinelands into the district, it also has acquired a right to a direct flow diversion for 10.2 c.f.s. with a date of October 1, 1900, priority No. 211.

In relation to the use of its decreed rights and whether there was evidence of due diligence to protect the conditional decree, the trial court found *inter alia:*

"The district is 15 miles long and two miles wide at its widest point, consisting of 12,000 acres, portions of which are not served with water from the district's facilities. Approximately 9,200 acres are assessed as 'water rights lands', but the district delivers water to only 8,100 acres which also include 'the Vinelands.' The remainder is set out of irrigation for various reasons such as being suburban residential and industrial property.

"The district and its water system are depicted on Exhibits C

and D. Generally, the water is diverted from the Colorado River by the Grand Valley Diversion Dam in DeBeque Canyon into and through the Government High Line Canal on the west side of the river and running in a southerly or southwesterly direction to a point approximately 3/4 of a mile downstream from Cameo. At that point there is a division of water. Applicant's system receives its share of water through an inverted siphon which lies under and crosses the river from whence the water flows down the Orchard Mesa Power Canal southwesterly and through the Vinelands to the Grand Valley Power Plant and the Orchard Mesa Pumping Plant. The water for use on the mesa is lifted at the pumping plant and is discharged into two canals known as the No. 1 or Low Lift Canal, and the No. 2 or High Lift Canal (lands at higher elevation).

"The portion of the water that drives the turbines to provide power for connected pumps in the water lifting operation goes through the turbines, drops out and into the tailrace and returns to the river.

"The net amount of water which can be lifted to the mesa from the 450 cubic foot absolute decree is 160 cubic feet, being 90 feet to the Canal No. 1 and 70 feet to the Canal No. 2.

"The Vinelands area of 570 acres receives its water above the plant, upstream, from a different system. The water rights for this area are the same as any other rights in the district, but there is an earlier water decree of 10.2 cubic feet per second for the Vinelands which has been transferred to the district and is claimed by it in addition to the 450 cubic second feet.

"Improvements to the facilities were made to enable the district to make better delivery of the water represented by the absolute, but not the conditional, portion of the decreed water rights. Rehabilitation and Betterment contracts were entered into with the U. S. Bureau of Reclamation in that behalf.

"No enlargement of the facilities has been made. On the contrary, the applicant since the year 1922, has had the right to run only 400 cubic second feet of water through the

Government High Line Canal to the East Portal of Tunnel No. 3. Then, too, the Public Service Company of Colorado has a carriage right for 400 cubic second feet of water through the said under-river siphon to an electric generating plant operated by it. The delivery of such water is a part of the management activity of the applicant herein. The Orchard Mesa Siphon has a safe capacity of only 800 cubic second feet of water.

"The evidence in this case plainly shows that for more than half a century the lands within the boundaries of the district have been in need of more water than has been delivered through the Orchard Mesa Canal. Inadequate facilities, in sum, is the reason why the applicant has slept on its conditional right and failed to exercise reasonable diligence for its protection.

"The applicant's inaction and oblivious conduct with respect to the 100 cubic second feet of water conditionally decreed is evidenced by the minutes of its board of directors. (Exhibit 5). Its assertion that the decree as to such water is absolute in the face of the evidence which has been presented further convinces the Court that the applicant has been captured by unreality in this case.

"The need of additional water, in itself, is no evidence of reasonable diligence in perfecting an appropriation of water awarded by conditional order. It might be a motive for obtaining the conditional right but it does not constitute any action required by the law which considers the rights of other involved water users. The applicant has not proved by a preponderance of evidence the exercise of reasonable diligence."

Applicant claims that two errors in findings of the court as to the capacity of the Orchard Mesa siphon and limitations by contract on the amount of water to be run through the Government High Line Canal vitiate the court's conclusions that due diligence had not been shown. We do not agree.

These items were not controlling in the court's conclusions. In this type of case involving factual issues, it is fundamental that a trial court's findings are binding upon the

appellate court and will not be overturned if the evidence is sufficient to sustain them. *Baca Irrigating Ditch Co. v. Model Land and Irrigation Co.,* 80 Colo. 398, 252 P. 358; *Platte Valley Irrigation Co. v. Central Trust Co.,* 32 Colo. 102, 75 P. 391; *Handy Ditch Co. v. Louden Irrigating Canal Co.,* 27 Colo. 515, 62 P. 847. *See also Knapp v. Colorado River Water Conservation District,* 131 Colo. 42, 279 P.2d 420.

▆ The record considered by the trial court contains evidence to support the court's findings that no steps had been taken by the District in fifty years to apply the 100 c.f.s. of water in the conditional decree to the "irrigation of its lands." For example, the minutes of several meetings by the Board of Directors of the district in the years prior to the filing for a finding of diligence contain admissions that the district had failed to take any action on its conditional decree. Following is an excerpt from the minutes of the January 25, 1967 meeting:

"An inquiry was made about some Colorado River water supposedly decreed to the District over 40 years ago, which is not being utilized. After considerable discussion it was moved by Mr. Harold Motz, seconded by Mr. Delbert Brown and carried, that the Board of Directors of the District make some determination as to the existence of said water decrees, and the possibility of their beneficial application, so far as the District is concerned."

Then in the minutes of the 1968 annual meeting further Board discussion was reported as follows:

"In response to a question raised at the 1967 annual meeting, concerning the existence of unused water decreed to the District, both Attorney Williams, and Robert Jennings, project manager for the Bureau of Reclamation at Grand Junction, spoke on the subject. It was pointed out that said decree was conditional, based on the beneficial use and dated over 50 years ago. Therefore, its status at this time is extremely uncertain. Also, it was pointed out that to lift any additional water up on the Mesa would require heavy expenditure to either rebuild the existing pumping plant and canals, or install auxilliary pumping facilities mid-way of the

District, with the economic feasibility of either alternative very doubtful."

 The trial court correctly construed these exhibits, as well as other evidence, as showing a lack of intent to diligently utilize the conditional decree. To prove due diligence there must be shown an intention to use the water, coupled with concrete action amounting to diligent efforts to finalize the intended appropriation. At some time the steps required to be diligently pursued will result in putting the water to beneficial use. Support of the claim of due diligence by the applicant must be proved by a preponderance of the evidence. A record which shows only a hope someday to use the water, but with admitted prior years of inaction, will not support the claim.

The judgment is affirmed.