MUNICIPAL SUBDISTRICT, NORTH-
ERN COLORADO WATER CONSERV-
ANCY DISTRICT, Protestant-Appel-
lant,

v.

RIFLE SKI CORPORATION,
Applicant-Appellee,

and

Orlyn J. Bell, Division
Engineer, Appellee.

No. 84SA442.

Supreme Court of Colorado,
En Banc.

Sept. 8, 1986.

Davis, Graham & Stubbs, John M. Sayre, Robert V. Trout, Bennett W. Raley, Denver, for protestant-appellant.

John W. Savage, Jr., Rifle, for applicant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Jeffrey J. Kahn, Asst. Atty. Gen., Denver, for appellee.

ERICKSON, Justice.

This appeal centers upon the interpretation of the Water Right Determination and Administration Act of 1969 (1969 Act). Section 37–92–301(4), 15 C.R.S. (1973), of the 1969 Act requires the holder of a conditional water right to obtain quadrennial findings in the water court that the conditional right is being developed with reasonable diligence. The appellant-protestant, Municipal Subdistrict, Northern Colorado Water Conservancy District (Subdistrict), seeks reversal of a water court entered order pursuant to section 37–92–301(4), finding reasonable diligence in the development of a water appropriation proposed in a conditional decree owned by the Rifle Ski Corporation (RSC), appellee-applicant. We hold that the water court's finding of reasonable diligence is not supported by sufficient evidence and accordingly reverse the order of the water court and remand the case for dismissal of RSC's quadrennial application.

I.

The District Court, Water Division 5, awarded RSC a conditional decree under the 1969 Act, section 37–92–302, 15 C.R.S. (1973 & 1985 Supp.), on November 9, 1971, to store 32,800 acre-feet of water in the proposed Webster Hill Reservoir (Reservoir) on the mainstream of the Colorado

River near Rifle, Colorado. The conditional decree states that the Reservoir water is to be used for industrial, domestic, municipal, recreation, irrigation, and power pumping purposes. To maintain the priority date of the conditional decree, section 37–92–301(4) requires a quadrennial finding by a water court of reasonable diligence in the development of the conditional appropriation. RSC obtained water court quadrennial findings of reasonable diligence in the development of the Reservoir in 1973 and 1977. The present action was commenced in 1981 by the filing of an application in the water court for a finding of reasonable diligence in the development of the Reservoir project from July 1, 1977, to June 30, 1981. The Subdistrict filed a protest to the RSC application after a water referee issued a preliminary ruling.

RSC asserts that the following evidence presented to the water court supported a finding of reasonable diligence: (1) assignment of its conditional storage decree for the Reservoir project to the West Divide Water Conservancy District and the Colorado River Water Conservation District; (2) the drilling of four core holes by the Bureau of Reclamation on the site of the proposed Reservoir; (3) financing obtained in 1971 for the purchase of Reservoir property; and (4) inquiries made to the Bureau of Land Management (BLM) regarding a possible exchange of land owned by RSC for BLM lands.

On August 3, 1984, the Division 5 water court issued its order finding reasonable diligence for the period 1977 to 1981. The core drilling on the Reservoir site was the only factor specifically cited by the water court in support of its order. The court stated that the core drilling performed by the Bureau of Reclamation "represented actual good faith work on the overall facility necessary to consumate [sic] the ultimate goal of diversion of water" which supported a finding of reasonable diligence by RSC.

The Subdistrict now asserts that the evidence offered by RSC was insufficient as a matter of law to support a finding of rea-sonable diligence in completing the Webster Hill Reservoir appropriation proposed in RSC's 1971 conditional storage decree.

## II.

Section 37–92–302, 15 C.R.S. (1973 & 1985 Supp.), provides for an application for determination of a "conditional water right." The 1969 Act states that " '[c]onditional water right' means a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1973). A conditional water decree requires an intent to appropriate and an overt, physical act constituting the first step toward diversion and application to a beneficial use. *Rocky Mountain Power Co. v. White River Electric Association,* 151 Colo. 45, 376 P.2d 158 (1962). *See also Fort Lyon Canal Co. v. Amity Mutual Irrigation Co.,* 688 P.2d 1110 (Colo.1984) (applying § 37–92–305(9)(b), 15 C.R.S. (1985 Supp.), added by the General Assembly in 1979). The purpose of a conditional decree is to allow the priority of an appropriation to relate back to the time of the first step toward that appropriation. *Rocky Mountain Power Co. v. Colorado River Water Conservation District,* 646 P.2d 383 (Colo. 1982).

In order to maintain the original priority date established in the conditional decree, the 1969 Act requires quadrennial findings of reasonable diligence:

> In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding ... of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned.

§ 37–92–301(4), 15 C.R.S. (1973). The owner of a conditional water decree must comply with the requirement of quadrennial findings of diligence in section 37–92–301(4) in order to maintain the priority date in the original decree. *Town of DeBeque v. Ene-*

wold, 199 Colo. 110, 606 P.2d 48 (1980). Failure to comply with the statutory requirements results in the "abandonment" of the conditional water right. *Id.* The 1969 Act provides that " '[a]bandonment of a conditional water right' means the termination of a conditional water right as a result of the failure to develop with reasonable diligence the proposed appropriation upon which such water right is to be based." § 37–92–103(1), 15 C.R.S. (1973).

We have previously held that an applicant has the burden of proving reasonable diligence by a preponderance of the evidence. *Orchard Mesa Irrigation District v. City and County of Denver*, 182 Colo. 59, 511 P.2d 25 (1973). A statutory diligence determination is made solely on the basis of factual issues as presented by the evidence, and "[w]here factual issues are involved a trial court's findings are binding upon the appellate court if there is any competent evidence in the record to support that finding." *Colorado River Water Conservation District v. City and County of Denver*, 640 P.2d 1139, 1142–43 (Colo. 1982).

We considered the substantive requirements of "reasonable diligence" for purposes of section 37–92–301(4) in *Colorado River Water Conservation District v. City and County of Denver*, where we affirmed a water court finding that reasonable diligence had not been exercised in the development of conditional decrees owned by the Conservation District.[1] We stated that a diligence determination must be made on a case-by-case basis after considering the facts and circumstances relating to the development of each particular project, including the size and complexity of the project, the length of the construction season, the availability of materials, labor, and equipment, the economic ability of the claimant, and the intervention of outside delaying factors. *Colorado River Water*

*Conservation District*, 640 P.2d at 1141–42.

■ Reviewing the water court's order in the present case, we hold that the evidence presented by RSC was insufficient as a matter of law to support a finding of reasonable diligence in developing the Reservoir during the period from 1977 to 1981. The water court expressly relied only on core drilling and the obtaining of samples at the Reservoir site by the Bureau of Reclamation to support its finding of reasonable diligence. However, the record plainly shows that the activities of the Bureau of Reclamation in investigating the Reservoir site were undertaken purely to evaluate its suitability for inclusion in the "West Divide project," which was then under development by the West Divide Water Conservancy District and Colorado River Water Conservation District. RSC stipulated at trial that it "did not request that the Bureau perform the core drilling or [prepare] the reports, logs and maps" and "did not direct, control or compensate directly the persons who conducted the studies leading to the preparation of the Bureau reports, logs and maps." Absent privity of contract or an agency relationship, a private party may not claim the benefit of the activities of the Bureau of Reclamation. *See Colorado River Water Conservation District v. Rocky Mountain Power Company*, 174 Colo. 309, 486 P.2d 438 (1971).

■ RSC claims that it was in privity with the Bureau of Reclamation by virtue of an agreement with the West Divide and Colorado River Water Districts to assign the Reservoir conditional decree for inclusion in the West Divide project. Although core drilling by the Bureau of Reclamation at the Reservoir site was undertaken at the request of the West Divide and Colorado River Districts to investigate such a possibility, the record unequivocally reflects that RSC never reached any formal agree-

---

1. The Subdistrict emphasizes our holding in *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979). However, *Vidler* deals only with the requirements of intent and physical action nec-

essary to *establish* a conditional water right in the first instance. The facts and holding of *Vidler* do not involve issues relating to the quadrennial finding of reasonable diligence under section 37–92–301(4).

ment with the water districts regarding assignment of the conditional decree. The discussions never advanced beyond the negotiation stage and terminated prior to July 1, 1977, when the diligence period at issue began to run. RSC was never in privity with the Bureau of Reclamation, and RSC does not claim, and the record contains no evidence, that RSC had an agency relationship with the water districts or the Bureau of Reclamation. The Bureau's core drilling does not support RSC's claim of reasonable diligence.

RSC's two remaining claims are without merit. First, financing to purchase land on the Reservoir site was obtained in 1971, long before the diligence period at issue here began to run in 1977, and, in addition, the financing was obtained by an RSC shareholder individually and liability has never been assumed by RSC. Finally, RSC's claim that it negotiated with the BLM for a land exchange involving the Reservoir project is totally unsupported by the record. The "negotiation" apparently consisted entirely of an informal inquiry by RSC whether the BLM would consider an exchange of certain lands. The BLM responded that it was not interested. RSC did not present any other evidence regarding the BLM and did not even identify the lands in question. Financing obtained for the Reservoir property and RSC's inquiry to the BLM do not in any way support a finding of reasonable diligence on the part of RSC in developing the project.

In view of our holding that the evidence of RSC's activities was insufficient to support the water court's finding of reasonable diligence, we do not address the issue of what intent must be established by an applicant in a statutory diligence proceeding pursuant to section 37–92–301(4).

Accordingly, we reverse the finding of reasonable diligence entered by Water Division 5 of the District Court, and remand the case to the water court for dismissal of Rifle Ski Corporation's application under section 37–92–301(4) for a finding of reasonable diligence in the development of the proposed Webster Hill Reservoir project.