731 P.2d 665 (1987)
Concerning the Application for WATER RIGHTS OF the CITY OF AURORA, Colorado and the City of Colorado Springs, Colorado in the Eagle River or its Tributaries, Tributaries Involved: Homestake Creek and Cross Creek, in Eagle County.
VAIL VALLEY CONSOLIDATED WATER DISTRICT, Objector-Appellant,
v.
The CITY OF AURORA, Colorado and the City of Colorado Springs, Colorado, Applicants-Appellees, and
The City and County of Denver, Acting By and Through its Board of Water Commissioners, Appearant-Appellee.
No. 84SA543.
Supreme Court of Colorado, En Banc.
January 20, 1987.
*666 Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, P.C., T. Shaun Sullivan, David C. Hallford, Denver, for objector-appellant.
Horn, Anderson & Johnson, Louis Johnson, Gregory L. Johnson, Michael J. Gianunzio, James J. DuBois, Colorado Springs, for applicants-appellees.
*667 Wayne D. Williams, Michael L. Walker, Casey S. Funk, Denver, for appearant-appellee.
KIRSHBAUM, Justice.
Objector, Vail Valley Consolidated Water District (Vail Valley), appeals a portion of a decree of the water court granting Applicants, City of Aurora and City of Colorado Springs (the Cities), a quadrennial finding of reasonable diligence in the development of a conditional appropriation.[1] Vail Valley asserts: (1) that the Cities intentionally abandoned four of their conditional water rights; and (2) that the four conditional rights are no longer part of an integrated project and, therefore, diligence work to develop the project as a whole cannot be attributed to those four rights. We affirm the judgment of the water court.
The water rights at issue constitute four of many conditional rights associated with the Homestake Project, a transmountain diversion project which collects water from tributaries of the Eagle River on the western slope of the Continental Divide and transfers it to the eastern slope cities of Aurora and Colorado Springs, joint developers of the project.[2]
The project generally consists of two collection components: (1) Eagle-Arkansas, collecting water from tributaries generally on the east side of the Eagle River; and (2) Homestake, collecting water from tributaries on the west side of the Eagle River. As originally planned, the project entailed three phases: the Eagle-Arkansas Phase and two phases for development of the Homestake component, denominated Phase I and Phase II. Phase I, completed in 1967, consists of diversion facilities for four tributaries,[3] as well as a storage and delivery system which includes Homestake Reservoir, Homestake Tunnel (a five and one-half mile tunnel beneath the Continental Divide), a diversion dam across the Arkansas River, a pumping station and a delivery conduit.
Phase II was originally planned to include diversions from eight creeks in the Eagle River watershed, all within the White River National Forest. In 1974, because portions of the White River National Forest were being considered for designation as a wilderness area, the Bureau of Land Management suspended the right of way necessary for construction of the Cities' Phase II diversion facilities. In 1980, Congress enacted a law designating the area a protected wilderness, but expressly exempting from proscription the Homestake Project rights. See Act of Dec. 19, 1980, Pub.L. No. 96-560, § 102(a)(5), 94 Stat. 3265, 3266. In conjunction with their successful efforts to obtain Congressional approval of construction of diversion facilities in the wilderness area the Cities adopted a new engineering plan, "Plan B," in lieu of the Phase II plan. Plan B envisions minimizing environmental impact on the wilderness by utilizing a system of tunnels to develop half of the original Phase II water rights.[4] Four conditional water rights originally intended for Phase II construction will not be part of the Plan B development.
The Cities applied for a Special Use Permit from the U.S. Forest Service for construction of Plan B facilities and, in 1981, submitted a revised Environmental Impact Report to the Forest Service. The permit was not granted until May of 1983.
In 1982, the Cities filed an application for a quadrennial finding of reasonable diligence *668 in the development of their Homestake Project conditional rights for the period beginning June 1, 1978, and ending May 31, 1982.[5] Vail Valley filed a statement of opposition,[6] asserting, among other arguments, that the Cities had intentionally abandoned and had failed to develop with reasonable diligence the four water rights not included under Plan B (the four rights)rights to divert and put to beneficial use water from Whitney Creek, Peterson Creek and two unnamed creeks. The water court found that the Cities did not intend to abandon the four rights and that reasonable diligence had been applied in the development of the rights, the latter ruling based upon a finding of reasonable diligence in the Homestake Project as a whole and the attribution of that finding to the four rights as a part of the integrated Homestake Project.
Vail Valley appeals the ruling of the water court that the Cities did not intend to abandon the four rights not included in Plan B, asserting that the water court applied an incorrect test in resolving the issue. Vail Valley also asserts that a finding of reasonable diligence as to the four rights is erroneous because diligence work on the Homestake Project as a whole cannot be attributed to those particular rights.

I
At trial, Vail Valley asserted that the Cities demonstrated an intent to abandon the four rights by agreeing with Congress to permanently forego development of the rights, by agreeing with the Forest Service to relinquish the easement which could be used to develop the four rights and by failing to include the four rights in any written plans. The water court ruled that there was no affirmative indication that the Cities intended to abandon the rights. On appeal, Vail Valley argues that the water court applied an erroneous test for abandonment by placing the burden on Vail Valley to prove the Cities' intent to abandon the four rights.
An absolute water right is deemed abandoned only when the owner thereof intends to discontinue permanently the use of the water available under that right. See § 37-92-103(2), 15 C.R.S. (1973). In contrast, a conditional water right may be deemed abandoned upon a determination that the owner thereof failed to act with reasonable diligence to develop that right. Section 37-92-301(4), 15 C.R.S. (1973), provides in pertinent part:
In every fourth calendar year after the calendar year in which a determination is made with respect to a conditional water right, the owner or user thereof, if he desires to maintain the same, shall obtain a finding by the referee of reasonable diligence in the development of the proposed appropriation, or said conditional water right shall be considered abandoned.
Section 37-92-103(1), 15 C.R.S. (1973), also provides:
"Abandonment of a conditional water right" means the termination of a conditional water right as a result of the failure to develop with reasonable diligence the proposed appropriation upon which such water right is to be based.
This court has recognized that to prove reasonable diligence in the development of a conditional water right the applicant must show an intention to use the water coupled with concrete action amounting to diligent efforts to finalize the intended appropriation. Colorado River Water Conservation Dist. v. City & County of Denver, 640 P.2d 1139 (Colo.1982) (quoting Orchard Mesa Irrigation Dist. v. City & County of Denver, 182 Colo. 59, 511 P.2d 25 (1973)). In pretrial briefs and at trial, Vail Valley argued that, far from maintaining *669 a continuing intent to develop, the Cities actually intended to abandon the four rights. Vail Valley asserted that the Cities had affirmatively agreed to abandon the four water rights in exchange for congressional approval of construction of the Plan B facilities in the protected wilderness area.
Vail Valley's assertion that the Cities affirmatively agreed to abandon the four rights is not supported by the record. The federal legislation proposed to effect the agreement with the Cities was initially referred to the Senate Committee on Energy and Natural Resources. That committee issued a report indicating that although the Cities intended to construct the project in general compliance with the plan described in their engineering report, the proposed legislation was not intended to restrict the Cities to the engineering plans outlined in their preliminary report. S.Rep. No. 914, 96th Cong., 2d Sess. (1980). Moreover, as finally adopted, the Act of Congress designating portions of the White River National Forest as wilderness area contains the following provision:
That no right, or claim of right, to the diversion, and use of existing conditional water rights for the Homestake Water Development project by the cities of Aurora and Colorado Springs shall be prejudiced, expanded, diminished, altered, or affected by this Act. Nothing in this Act shall be construed to expand, abate, impair, impede, or interfere with the construction, maintenance or repair of said project, nor the operation thereof, or any exchange or modification of the same agreed to by the cities and the United States, acting through any appropriate agency thereof....
Act of Dec. 19, 1980, Pub.L. No. 96-560, § 102(a)(5), 94 Stat. 3265, 3266. This evidence supports the trial court's conclusion that the Cities did not intend to abandon the four rights at the time they sought and obtained their legislative exemption.
Vail Valley also contends that the Cities must be deemed to have abandoned the four water rights by accepting the terms of the new right of way granted by the Forest Service for construction of Plan B. The agreement with the Forest Service requires the Cities to relinquish their existing right of way for development of the four rights before the construction of Plan B facilities on the new right of way. However, the agreement was reached in May of 1983, a full year after the close of the diligence period at issue, and consequently has no bearing on a determination of reasonable diligence in the quadrennial period.[7]
Vail Valley also asserts that the Cities' failure to produce during the diligence period written plans for developing the four rights subsequent to implementation of Plan B demonstrated their intention to abandon these water rights. However, trial testimony by Harold Miskel, then chairman of the Cities' Homestake Project Steering Committee, and James Patton, one of the Cities' consulting engineers, indicated that implementation of Plan B was not a certainty; that an application for a Dredge and Fill Permit for Plan B was still pending with the Army Corps of Engineers; and that, although no written plans for such development existed at the time of trial, the Cities intended to develop the four rights not included in Plan B whether or not Plan B were implemented. In light of the fact that the process of obtaining permits for Plan B was still underway at the time of trial and the fact that all of the water rights might yet be developed in some alternate configuration either in conjunction with or entirely different from Plan B, it is not unreasonable to assume that the Cities would hesitate to invest in an engineering study to develop a written plan which might be completely obviated by a failure to implement Plan B. A water *670 court has broad discretion to consider all such relevant factors. See Trans-County Water, Inc. v. Central Colorado Water Conservancy Dist., 727 P.2d 60 (Colo.1986).
Although the water court did state that there was "no affirmative indication" that the Cities intended to abandon the four rights, this conclusion was not the sole basis for its refusal to decree abandonment. The water court also noted that the proper test for abandonment of a conditional right is whether the applicant failed to develop that right with reasonable diligence as required by section 37-92-103(1). Furthermore, the water court specifically found that the Cities maintained a continuing intent to develop the four water rights not included in Plan B. A water court's findings are binding on appeal where, as here, there is competent evidence to support those findings. Orchard Mesa Irrigation Dist. v. City & County of Denver, 182 Colo. 59, 511 P.2d 25 (1973). We conclude, therefore, that the record supports the water court's conclusion that the Cities maintained a continuing intent to develop the four water rights.

II
Reasonable diligence in the development of conditional rights is demonstrated by a continuing intent to develop coupled with concrete action within the diligence period to finalize the appropriation. Colorado River Water Conservation Dist. v. City & County of Denver, 640 P.2d 1139 (quoting Orchard Mesa Irrigation Dist. v. City & County of Denver, 182 Colo. 59, 511 P.2d 25). It is undisputed that no diligence work was performed specifically on the four water rights. Vail Valley contends that the four rights are not part of an integrated project and, therefore, that diligence work performed on other Homestake Project rights cannot be attributed to the four rights.[8] We disagree.
Diligence must be determined in light of all relevant factors, including the size and complexity of the project, the extent of the construction season, the availability of labor and materials, the financial capacity of the applicant and the intervention of outside delaying factors. Colorado River Water Conservation Dist. v. City & County of Denver, 640 P.2d 1139; Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co., 171 Colo. 561, 468 P.2d 853 (1970). The measure of reasonable diligence is the steady application of constant effort to accomplish an undertaking, City & County of Denver v. Northern Colorado Water Conservancy Dist., 130 Colo. 375, 276 P.2d 992 (1954), in the most expedient and efficient manner under the circumstances, Colorado River Water Conservation Dist. v. City & County of Denver, 640 P.2d 1139.
In Metropolitan Suburban Water Users Association v. Colorado River Water Conservation District, 148 Colo. 173, 365 P.2d 273 (1961), we considered issues arising from the initial appropriation of the Homestake Project conditional rights. We there recognized that the viability of a project of Homestake's magnitude would depend upon obtaining findings of diligence for completion of increments of the total project. While non-project related efforts, standing alone, are insufficient to constitute diligence, Colorado River Water Conservation Dist. v. City & County of Denver, 640 P.2d 1139, work performed on one portion of an integrated project may be considered evidence of diligence as to another portion, City & County of Denver v. Colorado River Water Conservation Dist., 696 P.2d 730 (Colo.1985); Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co., 171 Colo. 561, 468 P.2d 853; Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist., 148 Colo. 173, 365 P.2d 273. Any contrary rule would impose the *671 insurmountable requirement that a single, multifaceted project be completed at one time, with simultaneous efforts directed toward completion of the upstream and downstream storage systems, the delivery system and each diversion facility in the collection system.
Evidence adduced at trial demonstrated that during the diligence period from June 1, 1978, to May 31, 1982, the Cities spent over $63 million in developing the Homestake Project. Included in these expenditures were sums of $24 million for construction of the Spinney Mountain Reservoir, $19.5 million for construction of the Rampart Parallel Pipeline, $6.6 million for initial construction of the Quincy Water Treatment Plant, over $200,000 for designing and engineering costs, $190,000 for the Phase II environmental impact study, $166,000 for upgrading the Otero pumping station, $74,000 for modification of the Arkansas River intake basin, $46,000 for a geological study and $42,000 for installation of underground electric lines to the Homestake Tunnel downstream portal. In addition, the Homestake Tunnel was relined during this diligence period at a cost of $8.9 million, following a series of collapses. The relining was necessary to insure that water could be delivered to the Cities from all of the diversion sites in the project.
Vail Valley argues that these expenditures cannot constitute diligence in developing the four rights because those rights were severed from the integrated project. In support of this contention Vail Valley notes that the water court did not delineate in any separate finding that those four rights are to be developed as part of the Homestake Project. However, the water court did expressly conclude that work on one part of a project may be considered as satisfying the diligence requirement for the entire system; that a conditional water right is deemed abandoned only for failure to develop with reasonable diligence; and that inasmuch as reasonable diligence was demonstrated on the Homestake Project as a whole, abandonment of the four rights should not be decreed. While a specific statement that the four rights remain a part of the integrated Homestake Project would have been helpful, such conclusion is implicit in the water court's rulings. The water court would not have attributed to the four rights the diligence work done on a portion of the actual project unless it had determined that those four rights remained a part of the project.
The evidence adduced at trial supports this conclusion. Harold Miskel testified the four rights are to be developed in an additional phase of the Homestake Project entirely distinct from Phase I, Phase II or the Eagle-Arkansas Phase. James Patton, one of the Cities' consulting engineers, testified that a letter report had been submitted to the Homestake Steering Committee delineating possible approaches the Cities might use to develop the four rights after development of Plan B.[9] Both Miskel and Patton also testified that the Homestake Project delivery system was built to accommodate all of the Homestake water rights, including the four rights not included in the Plan B phase of construction.
Vail Valley also argues that an applicant must demonstrate site-specific work to develop each conditional water right, suggesting that our decision in Colorado River Water Conservation District v. City & County of Denver, 640 P.2d 1139, is authority for this requirement. We do not agree. In Colorado River Water Conservation District we affirmed the water court's conclusion that the applicants failed to demonstrate reasonable diligence with respect to the development of several water projects. While noting that the water court had relied in large measure upon the fact that the evidence revealed absence of activity on these projects, we also pointed out that each diligence case must be determined on the basis of the factual circumstances *672 unique to the particular application involved. Here, the trial court concluded that the Cities demonstrated due diligence with respect to this particular project, albeit that diligence work was not performed at the sites of the four water rights here involved. A rule requiring some effort to develop each individual water right has never been a precondition to a finding of reasonable diligence in the development of water rights which are part of an integrated project.
Development of the four rights, unavoidably delayed by passage of the federal environmental legislation, would still proceed as part of a project using a common delivery system to divert water from tributaries of one river and one water basin in one water district. Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist., 148 Colo. 173, 365 P.2d 273. We conclude that throughout the applicable diligence period the four rights remained a part of the integrated Homestake Project and that the diligence work performed on the project as a whole was properly attributed to those four rights.

III
The Cities argue that Vail Valley's appeal of the water court's rulings is groundless and frivolous and that the Cities are therefore entitled to an award of double costs and attorney fees under C.A.R. 38(d). Colorado Appellate Rule 38(d) provides:
Sanctions for Frivolous Appeal. If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
In Mission Denver Co. v. Pierson, 674 P.2d 363 (Colo.1984), this court held that an appeal should be considered frivolous under C.A.R. 38(d) if the proponent can present no rational argument based on the evidence or law in support of the proponent's claim or defense, or the appeal is prosecuted for the sole purpose of harassment or delay.
A quadrennial diligence proceeding necessarily entails an ad hoc factual determination based upon diverse facts, some of which may be susceptible of multiple interpretations. Though unpersuasive, Vail Valley's arguments on appeal cannot be characterized as frivolous, especially in view of the fact that the water court's decree does not include a specific finding that the four water rights in question remain part of the integrated project. The record does not support a conclusion that Vail Valley failed to proffer a rational argument based on the evidence or law or that Vail Valley brought this appeal solely for purposes of harassment or delay. We conclude, therefore, that the Cities are not entitled to recover double costs and attorney fees under C.A.R. 38(d).
The judgment of the water court is affirmed.
NOTES
[1] This court has direct appellate jurisdiction of water court adjudications. See Colo. Const. art. VI, § 2(2); § 13-4-102(1)(d), 6 C.R.S. (1973); C.A.R. 1(a)(2).
[2] The Cities' conditional water rights for the Homestake Project have a priority relating back to 1952, the date that development of the project's water rights was first initiated. See Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist., 148 Colo. 173, 365 P.2d 273 (1961).
[3] Diversion facilities were constructed on French Creek, Fancy Creek, Missouri Creek and Sopris Creek during Phase I.
[4] The rights to be developed under Phase II are those associated with Cross Creek, West Cross Creek, East Cross Creek and Fall Creek.
[5] The Cities also concurrently filed an application to make absolute some of those conditional water rights, but subsequently withdrew the request.
[6] A statement of opposition was also filed by the Colorado Water Conservation District, but was subsequently withdrawn. Additionally, the City and County of Denver entered an appearance in the proceedings before the water court and is an appellee before this court.
[7] The extent of efforts to obtain a right of way for construction of diversion and delivery facilities may well be one factor that a water court would wish to evaluate in future diligence proceedings. However, on the basis of the record before us, we note that the Cities are not necessarily precluded from obtaining a right of way to develop the rights not included under Plan B.
[8] Vail Valley asserted at trial that the Homestake Project was not one integrated project, whereas in briefs submitted to this court it asserted that the four rights are not integrated with the Plan B rights. In oral arguments before this court, counsel for Vail Valley argued that the four rights were severed from the integrated Homestake Project. Our decision disposes of all those contentions.
[9] The water court, however, did not make a specific finding of fact that development of the four rights would occur under an additional phase of the Homestake Project distinct from the originally planned phases.