In the Matter of the Application of TAL-CO, LTD. for a Quadrennial Finding of Reasonable Diligence (Case No. 85CW299) and to Change Water Right (Case No. 85CW300) in Delta County, Colorado,

TALCO, LTD., Appellant,

v.

Jeris A. DANIELSON, State Engineer, and Thomas A. Kelly, Division Engineer for Water Division No. 4; William T. McCluskey, d/b/a Columbine Ranch; and Grand View Canal and Irrigation Company, Appellees.

No. 87SA50.

Supreme Court of Colorado.

Jan. 17, 1989.

Rehearing Denied Feb. 21,1989.

Klingsmith & Associates, P.C., P.C. Klingsmith, Gunnison, for appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Stephane Walter Atencio, Asst. Atty. Gen., Denver, for appellees Jeris A. Danielson, State Engineer, and

Thomas A. Kelly, Div. Engineer for Water Div. No. 4.

No appearance for appellees William T. McCluskey or Grand View Canal and Irrigation Co.

LOHR, Justice.

Talco, Ltd. (Talco) appeals from a judgment of the District Court for Water Division 4 (water court) granting the motions of the State Engineer and the Division Engineer for Water Division 4 to dismiss Talco's application for a quadrennial finding of reasonable diligence and its application for a partial change of point of diversion. Both applications relate to a conditional water right for 0.555 cubic feet per second (cfs) from the Smith Fork River in the Gunnison River drainage in Delta County. The water court based its ruling on the determination that the test well relied on by Talco to support its diligence application was not related to the conditional water right because the decree for that right limited diversions to surface waters from a stream. Talco also seeks reversal of the portion of the judgment that assessed attorney fees as part of the costs against both Talco and its counsel based on the court's conclusion that the applications lacked substantial justification. *See* § 13–17–102(4), 6A C.R.S. (1987).[1] We conclude that the water court correctly dismissed the applications and acted within its discretion in assessing attorney fees. Accordingly, we affirm the judgment.

## I.

On February 22, 1984, the water court granted the application of Talco for the determination of a conditional water right for 0.555 cfs for domestic, municipal, irrigation and stock watering purposes, with an appropriation date of May 2, 1980, and an adjudication date of December 31, 1980. The source of the water was the Smith Fork River, a tributary of the Gunnison River, in Delta County, and the decreed point of diversion was at a specifically de-

scribed location on the north bank of the Smith Fork River. The decree provides that

> [s]aid water is to be diverted directly from the stream of the Smith Fork River, and is not intended to divert underground waters. Said water will be diverted through an intake structure and then pumped through a pipeline to a water purification plant and storage tank in [a described location], from which it will then be applied to the beneficial purposes described.

The decree also made specific provisions for installation of the intake structure as follows:

> Because the intake structure is in the stream bed of the Smith Fork River, it is apparent that the following recommendations by the Division Engineer's office should be adopted: that at such time as the Applicant is prepared to commence installation of the intake structure, it shall give sufficient notice to the Division Engineer so that a representative of his office can be present to observe, supervise and review said installation, and in this regard said Division Engineer shall have authority to require that the applicant install said intake structure in such a way that it does not intercept ground water and that the mechanism installed is constructed in such a way that it implements a special control system so that the appropriate water official can shut down or curtail diversion through the structure during periods of call on the Smith Fork drainage in accordance with said official's responsibility to administer surface rights on said drainage system.

The water court found that the Smith Fork is a highly over-appropriated stream system and that the 1980 priority date awarded would make the water right subject to curtailment nearly every year. It found, however, that based on the "conditions and circumstances" stated in its findings and incorporated in its decree, no injury would result to other appropriators by granting

---

1. The State Engineer filed a notice of cross-appeal, but the cross-appeal was dismissed by stipulation of the parties.

the decree because "any potential injury can be eliminated by proper administration of the water rights on the stream." The decree also provided that during the month of December 1985 and every four years thereafter until the conditional decree should become absolute, Talco would be required to file with the court an application for a finding of reasonable diligence in the development of the proposed appropriation.

On December 31, 1985, Talco filed an application for a quadrennial finding of reasonable diligence and also filed a separate application for a partial change of point of diversion. The change of point of diversion application sought authority to divert 0.1 cfs of the 0.555 cfs previously decreed at a well located approximately one quarter of a · mile from the point of diversion described in the conditional water right decree. The change of point of diversion application stated that a test well had been drilled and completed, and that an application for a well permit had been submitted on March 20, 1984, but that no action had yet been taken on the application. The application for a quadrennial finding of reasonable diligence relied solely on the drilling of the test well at a cost of $9170, the testing of the well at an additional cost of $355.75, and the application for a well permit to support the requested finding of reasonable diligence.

The State and Division Engineers (objectors) filed joint statements of opposition to Talco's application for a quadrennial finding of reasonable diligence[2] and its application for a partial change of point of diversion. In each statement of opposition the objectors asserted that because the conditional water right decree provided that the diversion was to be directly from the river and that it "is not intended to divert underground waters," the drilling of the test well "which intercepts ground water near the decreed point of diversion both violates the decree awarding this conditional water

right and fails to constitute due diligence." The objectors also stated that Talco's well permit application had been denied by the State Engineer and that the State Engineer was "in the process of issuing an order to plug and abandon" the test well. Furthermore, the objectors averred in each statement of opposition that granting of the application "may materially injure vested water rights of others." In the statement of opposition to the application for a partial change of point of diversion, the objectors also asserted that out-of-priority diversions would be entailed and that Talco had not provided a plan for augmentation, implying that such a plan would be needed to protect senior appropriators against the adverse effects of diversions from a well.

On August 5, 1986, the objectors filed a consolidated motion to dismiss or in the alternative for a judgment on the pleadings in both the diligence proceeding and the· change of point of diversion proceeding. The objectors asserted that the drilling of the test well upon which Talco relied for a determination of due diligence directly contravened the terms of the conditional water right decree in that the decree limits diversions to surface water from the river, and also that there was no basis to connect the drilling of the test well to the conditional water right as decreed. Based on the premise that Talco had failed to allege any activities that could constitute diligence in the development of the decreed conditional water right, the objectors took the position that the conditional water right must be considered abandoned, and therefore the application for a partial change of point of diversion also must be dismissed because there is no existing water right to support the application. On August 5, 1986, the objectors also filed a motion for costs including · reasonable attorney fees on the basis that the applications for a quadrennial finding of reasonable diligence and for a partial change of point of diversion lacked substantial justification under the

2. Statements of opposition to both applications were also filed on behalf of William H. McCluskey, d/b/a Columbine Ranch, and Grand View Canal and Irrigation Company. These parties did not actively participate in the proceedings in the water court, which were limited to resolution of motions to dismiss filed by the State Engineer and Division Engineer, and did not file briefs on appeal.

standards of section 13–17–102(4), 6A C.R. S. (1987). In support of this motion, the objectors incorporated their motion to dismiss or in the alternative for judgment on the pleadings.

On September 18, 1986, the water court held a consolidated hearing on both applications and thereafter issued a written ruling granting the objectors' two motions. The court interpreted the conditional water right decree to provide expressly "that the water was to be diverted directly from the stream of the Smith Fork River and underground waters were not to be diverted under the auspices of said decree." The water court concluded as a matter of law that the drilling of the test well and associated activities as averred by Talco did not establish reasonable diligence in the development of the original appropriation as conditionally decreed. The court reasoned that the test well intercepted ground water as expressly prohibited by the conditional decree. The court also noted that if the ground water intercepted by the well was not hydrologically connected to the Smith Fork River, as Talco suggested might be the case, Talco could not rely on the diversion of such water to demonstrate diligence.

The water court also found that after Talco's application for a quadrennial finding of reasonable diligence had been filed, the State Engineer denied a permit for the test well and that separate litigation ultimately resulted in the plugging of the well. The court found that Talco had not challenged "by appeal or otherwise" the provision of the conditional water right decree "that ground water was not to be intercepted for use under the subject water right" and had not challenged the finding of the State Engineer that water was unavailable for appropriation through the use of a well at the site of the test well. *See* § 37–90–137(2), 15 C.R.S. (1988 Supp.) (State Engineer finding of availability of unappropriated water for withdrawal by proposed well is required before well permit can be issued). The court therefore held that the conditional water right must be considered abandoned and terminated and as a result the application for a partial change in point of diversion was "moot" and must be "denied and dismissed."

The court then ruled that the applications lacked substantial justification in that they were substantially groundless within the meaning of section 13–17–102(4), 6A C.R.S. (1987). It based this holding on the determination that Talco had filed an application for a quadrennial finding of reasonable diligence "relying upon a test well which would intercept ground water when in fact the Court's conditional decree expressly precluded the diversion of ground water for the enjoyment of the subject water right." The court specifically found that Talco's application could not be justified on the basis that it was an attempt to establish a new theory of law in Colorado. *See* § 13–17–102(7), 6A C.R.S. (1987) (attorney fees not to be assessed if claim was asserted in good faith attempt to establish new theory of law in Colorado). At a later hearing the water court received evidence concerning the amount of attorney fees to be assessed and awarded $4300 legal fees and $535 costs jointly and severally against Talco and its attorney, P.C. Klingsmith.

Talco appealed from the judgment of dismissal of its two applications, challenging the dismissals and the award of attorney fees. We first address the dismissals of the applications for a quadrennial finding of reasonable diligence and a partial change of point of diversion and then consider the award of attorney fees.

II.

A.

A summary of applicable principles of water law will provide a framework for discussion of Talco's challenge to the dismissal of its applications. A "conditional water right" means "a right to perfect a water right with a certain priority upon completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S.

(1973).[3] A conditional water right can be determined and decreed upon application pursuant to section 37–92–302(1)(a), 15 C.R.S. (1988 Supp.). Every four years the owner or user must obtain a finding of reasonable diligence in the development of the proposed appropriation or the conditional water right will be considered abandoned. § 37–92–301(4), 15 C.R.S. (1988 Supp.); *see, e.g., Municipal Subdistrict v. Rifle Ski Corp.*, 726 P.2d 635, 636–37 (Colo.1986); *Trans–County Water, Inc. v. Central Colorado Water Conservancy Dist.*, 727 P.2d 60, 64 (Colo.1986). The applicant·has the burden of proving reasonable diligence by a preponderance of the evidence. *Municipal Subdistrict v. Rifle Ski Corp.*, 726 P.2d at 637.

■ A decree determining a conditional water right must specify the month in which the application for a quadrennial finding of reasonable diligence is to be filed. § 37–92–301(4), 15 C.R.S. (1988 Supp.). Failure to obtain a quadrennial finding of reasonable diligence in the development of the proposed appropriation results in abandonment and terminates a conditional water right. *Bar 70 Enterprises, Inc. v. Highland Ditch Ass'n*, 694 P.2d 1253, 1255 (Colo.1985); *Town of De Beque v. Enewold*, 199 Colo. 110, 117, 606 P.2d 48, 52–53 (1980); *see* § 37–92–103(1), 15 C.R.S. (1973); *Vail Valley Consolidated Water Dist. v. City of Aurora*, 731 P.2d 665, 668 (Colo.1987); *Municipal Subdistrict v. Rifle Ski Corp.*, 726 P.2d at 636–37.

The purpose of requiring a quadrennial showing of diligence to maintain a conditional water right "is to prevent the accumulation of conditional water rights without diligent efforts to complete the projects to the detriment of those needing and seeking to make immediate beneficial use of the same water." *Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d 1139, 1141 (Colo.1982); *accord Bar 70 Enterprises, Inc. v. Highland Ditch Ass'n*, 694 P.2d at 1255. To this end,

an applicant seeking to obtain a finding of diligence must prove "an intention to use the water, coupled with concrete action amounting to diligent efforts to finalize the intended appropriation." *Orchard Mesa Irrigation Dist. v. City & County of Denver*, 182 Colo. 59, 65, 511 P.2d 25, 28 (1973); *accord, e.g., Vail Valley Consolidated Water Dist. v. City of Aurora*, 731 P.2d at 670; *Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d at 1142. A judicial evaluation of due diligence requires a case-by-case analysis based on all the facts and circumstances relating to the development of the particular project. *Municipal Subdistrict v. Rifle Ski Corp.*, 726 P.2d at 637; *Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d at 1141–42; *Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co.*, 171 Colo. 561, 567, 468 P.2d 853, 856 (1970).

■ "[N]on-project related efforts and activities to protect or promote the future development of a conditional water right, standing alone, will not be sufficient to support a finding of reasonable diligence." *Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d at 1142; *accord Vail Valley Consolidated Water Dist. v. City of Aurora*, 731 P.2d at 670; *Trans–County Water, Inc. v. Central Colorado Water Conservancy Dist.*, 727 P.2d at 64. However, diligence can be established by work done on any part of a project for diversion of water and application of that water to beneficial use. *Vail Valley Consolidated Water Dist. v. City of Aurora*, 731 P.2d at 670; *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d 730, 749–50 (Colo.1985) (work accomplished on one part of integrated project may constitute diligence as to another portion of project if part on which work is done must necessarily be constructed in order that the second portion may be successfully operated); *see also Metropolitan Suburban Water Users Ass'n v. Colorado River Water*

---

**3.** The terms "water right" and "appropriation" are also defined in sections 37–92–103(12) and –103(3), 15 C.R.S. (1973 & 1988 Supp.), respectively. Each of these definitions employs the phrase "waters of the state," which in turn is defined in section 37–92–103(13), 15 C.R.S. (1973).

*Conservation Dist.*, 148 Colo. 173, 203, 365 P.2d 273, 289 (1961).

## B.

We turn now to the application of these principles to the facts of the present case. In ruling on the motion to dismiss or in the alternative for judgment on the pleadings, the water court correctly considered the facts pleaded by Talco to be true. *See Abts v. Board of Education*, 622 P.2d 518, 521–22 (Colo.1980) (motion for judgment on the pleadings); *McDonald v. Lakewood Country Club*, 170 Colo. 355, 363, 461 P.2d 437, 441 (1969) (motion to dismiss for failure to state a claim). In its application for a quadrennial finding of reasonable diligence, Talco relied solely on the drilling and testing of the well and the filing of an application for a well permit to justify the requested finding.

■ The issue before us is not whether the drilling of the test well and the associated activities were quantitatively sufficient to meet the requirement of due diligence.[4] Instead, the sole question is whether those activities were sufficiently related to the development of the proposed appropriation so as to constitute reasonable diligence. We agree with the water court that the test well, which diverted underground waters and therefore was expressly prohibited as a means of diversion by the court's original decree, "was not sufficiently related to the original appropriation to constitute reasonable diligence in the development of the original appropriation."

In arriving at this conclusion, we consider several facts specific to the decreed con-ditional water right to be significant. In granting the original decree the water court found that the Smith Fork River was highly over-appropriated. As a result, the decree was carefully drafted to assure that diversions would be made only from the river and would not intercept ground water. With this limitation, Talco's diversions could be swiftly and effectively curtailed if necessary to satisfy the requirements of senior appropriators on the Smith Fork River drainage. The original decree is replete with evidence of the court's determination that diversions of underground water must be forbidden in order to facilitate administration of the newly decreed conditional water right so as to afford maximum protection to the holders of senior rights.

■ We conclude that the water court was correct in evaluating Talco's application for a quadrennial finding of reasonable diligence based on the proposed appropriation set forth in the original decree. Because Talco did not appeal the decree provisions limiting its diversions to waters in the stream,[5] it could not divert underground water pursuant to its conditional decree unless and until it obtained a change of water right.[6] Such a change could be granted only if it would "not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." § 37–92–305(3), 15 C.R.S. (1973). Although an applicant for a change of water right must always be afforded the opportunity "to propose terms or conditions which would prevent such injurious effect," *id.*, the difficulty of providing such protections in an over-appropriated stream system

---

4. Talco proposes to use the well as a point of diversion for only 0.1 cfs of the 0.555 cfs conditionally decreed. The parties do not raise the question whether under such circumstances, diligence in the development of a portion of a decreed conditional water right can satisfy the reasonable diligence requirement as to the entire amount decreed. Because we decide that under the circumstances of this case, the drilling of the well was not sufficiently related to the development of the proposed appropriation that is the subject of the 0.555 cfs conditional decree, it is unnecessary for us to reach that question.

5. We express no opinion on the appropriateness of the provisions of the original decree limiting diversions to surface water from the stream.

6. Talco also argues that the water court misread the conditional decree in holding that it prohibits diversion of underground water at any location. Talco asserts that such prohibition relates only to the interception of ground water from the river bed at the decreed point of diversion. We disagree. The decree clearly evinces the court's concern that any diversions of underground water would be injurious to holders of senior water rights on this over-appropriated stream.

without a plan for augmentation is obvious. Talco did not seek a change of water right to authorize the proposed partial change of point of diversion until December 31, 1985, the last day for filing the application for a quadrennial finding of reasonable diligence. In its application for a partial change of point of diversion filed on that day, Talco proposed no plan for augmentation to protect against possible injury. Under these circumstances Talco had no reasonable basis to expect that the court would approve the application for a partial change of point of diversion. Absent at least a reasonable prospect of such approval, there was no basis to relate the work done at the test well site to the proposed appropriation represented by the decreed conditional water right specifically limiting diversions to surface water flowing in the river. *Cf. Broyles v. Fort Lyon Canal Co.*, 638 P.2d 244 (Colo.1981) (production from replaced wells cannot be used to make absolute conditional water rights decreed to replacement wells absent a judicial decree establishing the replaced wells as alternate points of diversion).[7]

Talco relies in part upon its application for a permit to drill a well at the site of the test well to support its application for a finding of diligence.[8] However, no action had been taken on the application for a well permit when Talco filed its application for a quadrennial finding of reasonable diligence on the last day legally permissible. *See* § 37–90–137(1), 15 C.R.S. (1988 Supp.) (concerning applications for well permits). The issuance of such a permit was dependent upon a finding by the State Engineer that "there is unappropriated water available for withdrawal by the proposed well and that the vested water rights of others will not be materially injured" as "substantiated by hydrological and geological facts." § 37–90–137(2), 15 C.R.S. (1988 Supp.). The prospect for such a finding in a highly over-appropriated stream system was at best problematic.[9] Therefore, Talco had no reasonable expectation that the well permit would be issued. Even more importantly, based on the provisions of the original conditional water right decree, Talco had no reasonable basis to expect that the well could be established as a point of diversion for water conditionally decreed. Accordingly, the water court correctly concluded that Talco's application for a well permit would not support a finding of reasonable diligence.

7. Talco argues that the original decree could not preclude establishment of a different point of diversion if Talco could satisfy the legal requirements applicable to such a change. *See* § 37–92–305(3), 15 C.R.S. (1973) (requiring approval of a change of water right if certain conditions are met); *Weibert v. Rothe Bros., Inc.*, 200 Colo. 310, 618 P.2d 1367, 1371 (1980). Even if this is correct, the issue in the present case is not whether Talco could have obtained a decree permitting a partial change of point of diversion. Rather, the issue is whether Talco can rely upon work done on a well at a point for which it hopes to obtain a future decree for a change of point of diversion to establish reasonable diligence in the development of a conditional water right that specifically limits diversion to surface waters from a stream. Under the facts presented here, we hold that it cannot.

We also find no merit in Talco's contention that its reliance on the drilling and testing of the well to establish reasonable diligence is supported by the general policy of the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, 15 C.R.S. (1973 & 1988 Supp.), to integrate the appropriation, use and administration of underground water tributary to a stream with the use of surface water in such a way as to maximize the beneficial use of all the waters of the state. *See* § 37–92–102(1), 15 C.R.S. (1988 Supp.). This general policy does not override the provisions of the original decree limiting diversions to surface waters from a stream—provisions that were adopted by the water court to assure that the newly decreed conditional water right could be administered consistent with protection of the rights of senior appropriators.

8. The objectors do not contend that the drilling of a test well before a permit has been issued is in violation of law or regulation.

9. As the water court noted, the State Engineer denied the requested well permit after Talco filed its applications for a quadrennial finding of reasonable diligence and for a partial change of point of diversion. Separate litigation resulted in the plugging of the well. Talco does not argue that the water court acted inappropriately in taking notice of these facts, which are not contained in the pleadings, and in any event we do not read the water court's decree dismissing the applications as dependent upon the fate of Talco's application for a well permit.

■ Nor are we persuaded by Talco's argument that the water court should have held an evidentiary hearing at which it would have considered the application for a partial change in point of diversion on the merits before ruling on the diligence application. If the application for a partial change in point of diversion had been approved under this procedure, Talco contends, then the application for a quadrennial finding of reasonable diligence should have been approved by attributing the work done on the test well to the development of Talco's decreed conditional water right. We disagree. Work allegedly done in development of a conditional water right must be evaluated under the circumstances in existence at the time it is performed. At that time there was no sufficient connection between the test well and the decreed conditional right for 0.555 cfs to attribute work on the test well to development of the conditional water right for reasons previously discussed.

In reaching our conclusion that the water court correctly dismissed Talco's diligence application, we emphasize once again that applications for findings of reasonable diligence in the development of a conditional water right are to be considered on a case-by-case basis in light of all the factors presented. *Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d 1139, 1141–42 (Colo.1982); *Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co.*, 171 Colo. 561, 567, 468 P.2d 853, 856 (1970). Under the facts and circumstances presented here, the water court properly concluded that Talco had not demonstrated reason-able diligence in the development of the proposed appropriation represented by the 0.555 cfs conditional water right decree. As a result, the conditional water right must be considered abandoned, § 37–92–301(4), 15 C.R.S. (1988 Supp.), and the water court properly dismissed the application for a partial change of point of diversion because the conditional water right to which it related was terminated by abandonment.

### III.

The water court awarded attorney fees jointly and severally against Talco and its attorney based upon section 13–17–102, 6A C.R.S. (1987). Talco challenges this award, and we next consider whether the water court acted within its discretion in assessing attorney fees.

Section 13–17–102 authorizes any court of record to award attorney fees jointly or severally against "any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." The term "lacked substantial justification" means "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4), 6A C.R.S. (1987). No attorney fees shall be assessed, however, if the court determines that the claim or defense was asserted in a good faith attempt to establish a new theory of Colorado law. § 13–17–102(7), 6A C.R.S. (1987). Section 13–17–103 contains a non-exclusive list of factors that a court must consider in determining whether to assess attorney fees.[10] The General Assembly

---

10. Section 13–17–103, 6A C.R.S. (1987), provides:

(1) In determining the amount of an attorney fee award, the court shall exercise its sound discretion. When granting an award of attorney fees, the court shall specifically set forth the reasons for said award and shall consider the following factors, among others, in determining whether to assess attorney fees and the amount of attorney fees to be assessed against any offending attorney or party:

(a) The extent of any effort made to determine the validity of any action or claim before said action or claim was asserted;

(b) The extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action;

(c) The availability of facts to assist a party in determining the validity of a claim or defense;

(d) The relative financial positions of the parties involved;

(e) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith;

adopted these provisions for the assessment of attorney fees in response to the increasing litigation burden "straining the judicial system and interfering with the effective administration of justice." § 13–17–101, 6A C.R.S. (1987). Courts are to construe the attorney fee provisions liberally "to effectuate substantial justice and comply with" the statutory intent. *Id.*

The water court awarded attorney fees in this case based upon its conclusion that the applications for a quadrennial finding of reasonable diligence and for a partial change of point of diversion "lacked substantial justification" in that they were "substantially groundless." In *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (1984), we considered the meaning of "frivolous" and "groundless" as those terms were used in a predecessor statute to section 13–17–102. We held:

> A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense. This test ... does not apply to meritorious actions that prove unsuccessful, legitimate attempts to establish a new theory of law, or good-faith efforts to extend, modify, or reverse existing law. Similarly, a claim or defense is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. This test assumes that the proponent has a valid legal theory but can offer little or nothing in the way of evidence to support the claim or defense. Both of these tests presuppose a certain professionalism on the part of trial counsel. Certainly, if the record reveals that counsel or any party has brought, maintained, or defended an action in bad faith, the rationale for awarding attorney fees is even stronger. Bad faith may include conduct which is arbitrary, vexatious, abusive, or stubbornly litigious. It also may include conduct aimed at unwarranted delay or disrespectful of truth and accuracy.

*Western United Realty*, 679 P.2d at 1069 (footnote omitted).

The present statute employs the terms "substantially frivolous" and "substantially groundless" in place of the terms "frivolous" and "groundless" as set forth in the statute that we construed in *Western United Realty*. In concluding that the applications were substantially groundless the water court held:

> The Applications presented by Talco ... are substantial[ly] groundless. This is true because the Applicant filed an Application for a quadrennial finding of reasonable diligence relying upon a test well which would intercept ground water when in fact the Court's conditional decree expressly precluded the diversion of ground water for the enjoyment of the subject water right. Said prohibition was based upon both the State Engineer's position and the Court's belief that underground water was unavailable for appropriation in the area of the subject water right. Further, the Applicant demonstrated no diligence whatever in pursuing the actual water right which had been conditionally decreed. Rather, the Applicant took steps to develop a new water source and then attempted to claim that this was done in an effort to show diligence for the conditional water right.

■ As previously noted, section 13–17–103 requires a trial court to consider a number of specified factors "among others" in determining "whether to assess attorney fees and the amount of attorney fees to be assessed against any offending attorney or party." *See* n. 10, above. This language by its very nature vests a trial court with broad discretion in deciding whether to impose attorney fees. We find it unnecessary in the present case to arrive at a precise definition of "substantially

(f) Whether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict;

(g) The extent to which the party prevailed with respect to the amount of and number of claims in controversy;

(h) The amount and conditions of any offer of judgment or settlement as related to the amount and conditions of the ultimate relief granted by the court.

frivolous" or "substantially groundless" except to conclude that they are no more demanding standards than "groundless" and "frivolous" as defined in *Western United Realty*. The water court found that Talco had no basis for assuming that a test well to determine the presence of ground water demonstrated diligence in developing a conditional water right that was expressly limited by judicial decree to diversions of surface water. This finding is fully supported by the facts pleaded and properly considered by the court. While the facts may better establish that the applications were "substantially frivolous," in that Talco can put forth no rational argument based on the evidence or the law in support of its claims, than that they were "substantially groundless," *see Western United Realty*, 679 P.2d at 1069, this difference in classification is of no import. The record reflects that the water court considered the applicable factors set forth in section 13–17–103. The facts pleaded by Talco support the water court's ultimate determination that the claims were without substantial justification and therefore that an award of attorney fees against Talco and its attorney was within the discretion of the water court pursuant to sections 13–17–102 and –103, 6A C.R.S. (1987).[11]

### IV.

In summary, we conclude that the water court acted correctly in dismissing Talco's applications for a quadrennial finding of reasonable diligence and for a partial change of point of diversion. We also conclude that the court acted within its discretion in imposing attorney fees jointly and severally upon Talco and its attorney for bringing these actions without substantial justification.

JUDGMENT AFFIRMED.

---

**11.** Talco argues that the assessment of attorney fees was unauthorized because Talco was attempting in good faith to establish a new theory of law in Colorado. *See* § 13–17–102(7), 6A C.R.S. (1987). Talco, however, presents no persuasive explanation of the nature of this new theory. We conclude that resolution of the merits of Talco's applications involves application of well-settled principles of law, with the result that § 13–17–102(7) is inapplicable.